1  Carl Wescott
   PO Box 190875
2  San Francisco, CA 94966
   *in propria persona*
3  +1 415 335 5000

**FILED**

OCT 1 0 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISON

CV 17    5837 SK

| | |
|---|---|
| Carl Alexander Wescott, | ) Case Number _____ |
| Plaintiff | ) |
| | ) COMPLAINT FOR VIOLATIONS OF THE |
| ------------- versus ------------- ) | FDCPA; RETALIATION UNDER FERRA; |
| | ) BREACH OF CONTRACT; CONVERSION; |
| | ) LEGAL MALPRACTICE; WRONGFUL |
| Monette Stephens and | ) EVICTION; MORTGAGE FRAUD; CONSUMER |
| Michelle Harris, esquire | ) FRAUD; CIVIL FRAUD. |
| Defendants | ) ACCOUTING REQUESTED |
| | ) JURY TRIAL REQUESTED |

1. Plaintiff Carl Wescott ("Plaintiff") is an individual and resident in San Francisco.

2. Defendant Michelle Harris, Esq. ("Harris") is an attorney practicing law in San Francisco.

3. Defendant Monette Stephens ("Stephens") is an individual residing in San Francisco. Stephens is the Plaintiff's former wife.

1

4. Jurisdiction is proper in this Court under 28 USC 1331 because this case arises under the Federal Debt Collection Practices Act 15 USC 1692e and the Financial Institutions Reform Recovery and Enforcement Act 12 USC 1833 et seq. ("FERRA").

5. Venue is proper in this district as it is the residence of the Plaintiff and Stephens and the primary place of business of Harris.

## UNDERLYING FACTS

### A. Consumer Fraud & Civil Fraud

6. Harris is a matrimonial law attorney. Virtually 100% of her practice involves the collection and settlement of consumer debt on behalf of her clients. Accordingly, Harris is a debt collector within the meaning of the FDCPA.

7. In early 2014 the Plaintiff and Stephens decided to separate and likely thereafter dissolve their marriage. At the time they had massive consumer debt, including mortgage payments on multiple residences, high credit card balances and other consumer loans (collectively "the Consumer Debt").

8. Because of a strained financial situation, on February 25th, 2014, Plaintiff and Stephens decided to hire one attorney who would assist them in negotiating a settlement in the most cost effective manner. The Plaintiff delegated the hiring of this attorney to Stephens. Stephens hired Harris.

9. Beginning on February 27, 2014, Harris began communicating directly with Plaintiff via email. Harris's first emailed statement to Plaintiff summarized her role as follows:

> "Monette Stephens has retained me to move your case from public court to private, written agreements regarding custody, support, housing, and the restraining order."

10. The Plaintiff reasonably concluded from Harris's communication that Harris was representing the interests of both Plaintiff and Stephens. In addition, Harris had the Plaintiff pay her directly which added to his impression that she was protecting his independent interests. Harris later directly invoiced Plaintiff $7,000 for legal services, which was also a consumer debt.

11. In reality, Harris was attempting to impose the harshest possible terms upon Plaintiff and obtain the best possible terms for Stephens.

12. Plaintiff accepted Harris's word that the minimum support amount he would need to pay Stephens was $15,000 per month even though Plaintiff correctly informed Harris in March 2014 that his annual revenue for that year was $1,600. Plaintiff also corrected emailed Harris the truth about his finances, which was that his total income for years had averaged $5,000 per year, or about $400 per month.

13. Plaintiff frantically borrowed money from family, friends and business colleagues to make this "minimum" support payment to cover more than six months even though it was in fact grossly in excess of any amount the Plaintiff would have been obliged to pay under California law.

14. Harris also persuaded the Plaintiff to assume the parties' mortgage obligations and consumer obligations at a level far in excess of any fair settlement or the requirements of California law.

15. In imposing ruinous payment terms on the Plaintiff, Harris violated 15 USC 1692e ("the UDCPA" in at least the following ways:

    a.  Omitted to disclose that she was a debt collector solely representing Stephens;

    b.  Falsely stated that the Plaintiff would be held liable for

mortgage and consumer debt that should have been split evenly between the parties under California law;

   c. Falsely stated that the Plaintiff would be without any legal remedy in contesting his responsibility for the parties' mortgage and consumer debt;

   d. Falsely stated that she had been hired to take the parties' case out of litigation when she in fact intended to repeatedly return to Court and did repeatedly return to Court to obtain <u>ex parte</u> and other rulings against the Plaintiff;

   e. Omitted to disclose <u>ex parte</u> communications with the Trial Court despite her duty to do so under both ethical and court rules.

16. Each of these misstatements and omissions (collectively "the Violations") was in aid of an attempt to collect consumer debt and each was made in violation of the UDCPA. Harris made her false statements in scores of emails and phone calls and a few meetings throughout 2014. The Plaintiff, an unrepresented layman, has, just, earlier this year, now discovered the falsity of Harris's Violations.

17. In addition to violating the UDCPA, the Violations were materially false when made.

18. Harris intended that the Plaintiff rely on the Violations.

19. The Plaintiff reasonably relied on the Violations and suffered damages by accepting and/or belatedly contesting responsibility for millions of dollars in joint consumer debt including payments in connection with a residence that the parties did not own to a third party having no connection with their divorce.

4

20. In sum and substance, Harris portrayed herself to Plaintiff as a kind of mediator whose purpose was to minimize the parties' litigation expenses and achieve a fair settlement. In fact, Harris was a ruthless litigator and debt collector who returned to court repeatedly and duped the Plaintiff into not contesting the imposition of massive consumer debt and excessive maintenance and support payments.

## B. Mortgage Fraud

21. Prior to the parties' marriage, Stephens owned a property at 3910 Carol Avenue in Santa Barbara California ("the Santa Barbara Property").

22. In the parties' divorce litigation, Stephens falsely (and perjuriously) stated that she owned the Santa Barbara Property "free and clear" before marriage. In fact the property was encumbered by approximately $500,000 in debt.

23. Stephens later sued the lender in connection with her Santa Barbara Property and obtained a refinancing. In the course of the refinancing, Stephens made materially false statements concerning her income and financial situation. Stephens also did not disclose that at that point the house was held in Atlas Consulting, LLC, an LLC which has been suspended by the State of California for many years (and thus legally Stephens could not refinance nor transfer the house to herself until Atlas Consulting LLC was brought up to date and in good standing).

24. Previously, Stephens had taken out $596,000 as a result of a prior fraudulent refinancing. When the Plaintiff objected to the later fraudulent transaction and its potential impact on the marital estate, Stephens falsely and fraudulently complained to the Court that the Plaintiff had "lost" the $596,000 gained through the earlier refinancing through bad investments (ignoring her previous liability on the Santa Barbara Property and the fact

that Plaintiff did not receive those monies). The Plaintiff was accordingly falsely made responsible by the Court to pay this mortgage.

## C. **Breach of Contract, Wrongful Eviction, & Conversion**

25. As of early 2014, Plaintiff and Stephens were occupying two primary houses, the Santa Barbara Property and a house in San Francisco ("the San Francisco Property"). Harris negotiated an agreement ("the Stipulation") between the parties to swap periods of occupancy at each house. It was agreed that Plaintiff would occupy the San Francisco Property in summer 2014 until September 1 at which point he would move into the Santa Barbara Property and Stephens would move into the San Francisco Property.

26. Harris and Stephens were both aware at the time the Stipulation was entered into that:

    (a) The Plaintiff had very little income and practically no access to savings or borrowing power;

    (b) The Plaintiff was relying entirely on his home office equipment and files (primarily laptops and computing equipment) to generate income and;

    (c) The Plaintiff lacked the ability to find housing at the last minute.

27. On August 25, 2014, Harris emailed the Plaintiff to advise him that she was having an Order entered that would force him to give up the San Francisco Property and prevent him from entering the Santa Barbara Property. Harris had made a version of her falsely induced stipulation in to a Court Order through false and ex parte communications with the Judge without proper notice to the Plaintiff. The Plaintiff was told by attorneys he consulted that Stephens was breaching the Stipulation and that he should remain in the San Francisco Property, but on September 1, Stephens provided the San Francisco police with the fraudulently obtained Court Order and Plaintiff was given twenty minutes to leave the San Francisco Property. Plaintiff was forced to leave his laptops and office equipment and all his other possessions that, upon information or belief, were later

destroyed by Harris or Stephens.

28. The result of Stephens' breach of the Stipulation was that the Plaintiff was sent on a downward spiral of homelessness and greatly diminished ability to earn income. The Plaintiff was also in a vulnerable position in all further proceedings that was intended and calculated by Harris and Stephens.

## COUNT I  ACCOUNTING – HARRIS & STEPHENS

29. The Plaintiff realleges paragraphs 1-28 as if fully set out herein.

30. The amount overpaid by Plaintiff as a result of the Violations cannot be determined without an accounting.

31. Harris and Stephens should be ordered to provide an accounting of all mortgage debt and consumer debt payments as well as support payments by Plaintiff in excess of the proper statutory amounts.

## COUNT II FDCPA – HARRIS

32. The Plaintiff realleges paragraphs 1-28 as if fully set out herein.

33. Defendant Harris was negligent, wilful or both in collecting and attempting to collect costs, fees, interest and expenses not authorized by agreement or permitted by law in violation of 1692(f)(1) and in omitting legal disclosures required by 1692(f)(3).

34. As a result of the foregoing Violations, Defendant Harris is liable for general damages, special damages and special damages to be proven at law including recovery of any such overpayments and $1,000 per specific violation (each misrepresentation or omission) under 1692(k) a 2 a.

## COUNT III COMMON LAW FRAUD – HARRIS & STEPHENS

35. The Plaintiff realleges paragraphs 1-28 as if fully set out herein.

36. In making the fraudulent representations and omissions set out in paragraph 14 (a) – (e) Harris was acting within the scope of her employment and agency with Stephens.

37. Harris's fraudulent misrepresentations and omissions have damaged Plaintiff by causing him to pay excess amounts in connection with the parties' debts, maintenance, child support and other fees. Specifically, the Plaintiff was defrauded into borrowing $100,000 to pay Stephens $15,000 per month for over six months; into assuming and paying debts of the parties including Harris's own legal fees; and into allowing Harris to obtain an unchallenged and fraudulent ex parte Order rendering him homeless and preventing him from making a living.

## COUNT IV – STEPHENS RETALIATION UNDER FERRA

38. Plaintiff realleges paragraphs 1-28 as if fully set out herein.

39. By falsely stating that Plaintiff had wasted the proceeds of her refinancing and falsely stating that the Property had been unencumbered before the parties' marriage, Stephens unlawfully retaliated against the Plaintiff under FERRA 12 USC 1833 373 (h).

40. The Plaintiff has been damaged by Stephens' act of retaliation by incurring liability for $596,000 on the refinanced Mortgage of the Property.

## COUNT V BREACH OF CONTRACT – STEPHENS AND HARRIS

41. Plaintiff realleges paragraphs 1-28 as if fully set out herein.

42. Stephens' and Harris' acts of renting out the Santa Barbara Property and wrongfully evicting Plaintiff from the San Francisco Property (despite FC2030 and FC2032)

materially breached the Stipulation.

43. The Plaintiff has been damaged as a result of Stephens' and Harris' breach by being rendered homeless and having virtually all his business opportunities destroyed.

## COUNT VI  CONVERSION – HARRIS & STEPHENS

44. Plaintiff realleges paragraphs 1-28 as if fully set out herein.

45. The Plaintiff had an unconditional possessory and legal right to the office equipment he kept in the San Francisco Property.

46. The Plaintiff was wrongfully evicted from the San Francisco Property before he could recover his office equipment.   Stephens and Harris denied having possession of Plaintiff's equipment.

47. However, a subsequent video inventory of the San Francisco Property taken by Ms. Stephens' boyfriend shows the Plaintiff's office equipment was present and in working order.

48. Further, in testimony under oath on October 13th, 2016 Stephens admitted she had the laptops and other computing equipment after all but had given them to Harris.

49. The Plaintiff had exactly one broken laptop returned by Harris (not his equipment).

50. Stephens blames Harris and Harris blames Stephens for the loss of Plaintiff's office equipment.

51. Stephens, or alternatively Harris working for Stephens, converted the Plaintiff's office equipment which had a face value in excess of $15,000 and caused Plaintiff to lose hundreds of thousands of dollars he could have earned with access to the office equipment.

## COUNT VII LEGAL MALPRACTICE – HARRIS

52. The Plaintiff realleges paragraphs 1-28 as if fully set out herein.

53. The Plaintiff had an implied in fact attorney client relationship with Harris based on at least the following facts:

54. Plaintiff and Stephens had agreed to hire an attorney to resolve issues between them and although Plaintiff delegated the hiring to Stephens, he believed that they had agreed to joint representation. Harris did not clearly or directly advise Plaintiff that her representation was not joint.

55. Harris did not advise Plaintiff to get another attorney.  Not even in their written agreements did Harris state or have Plaintiff sign that he had the right to an attorney which he had waived.

56. Harris advised Plaintiff that she had been hired to take the parties' transaction out of court and work toward an out of court resolution without clarifying that she represented Stephens only and was an adversary of Plaintiff.

57. Harris routinely advised the Plaintiff concerning the law – e.g. $15,000 was the least he would be required to pay despite an annual income in four figures – without emphasizing or explaining her adversary role and without urging Plaintiff to obtain independent legal advice.

58. Harris billed the Plaintiff directly for her legal services.

59. The Plaintiff reasonably believed he was consulting Harris for legal services. He reposed confidences in Harris, for example, concerning his income and income prospects and his litigation objectives that would have otherwise been considered privileged. He sought out Harris's judgment and opinion on legal matters including the terms of the Stipulation Harris not only did not caution the Plaintiff not to divulge privileged information, she

encouraged him to do so.

60. It only became clear to Plaintiff that Harris was in an adversary relationship to Plaintiff when she assisted Stephens in breaching the Stipulation and in rendering Plaintiff homeless despite the fact that Stephens was then left living in 3 homes (San Francisco, Tahoe, and Santa Barbara).

61. As a result of Harris's misrepresentations, omissions, and misleading statements and her volunteering legal advice to the Plaintiff in an ambiguous context, and Plaintiff's reliance, an implied attorney-client relationship was created between Harris and Plaintiff.

62. Harris breached her implied contract to provide legal services for Plaintiff and her fiduciary duties to Plaintiff by utilizing confidential information against him, misstating the law to inflate his obligations to Stephens, and inducing him to enter into one-sided agreements that benefitted Stephens and harmed him.

63. As a result of Harris's breaches of implied contract and fiduciary duty, the Plaintiff was damaged in that he paid excess amounts in support to Stephens; agreed to be directly responsible for Harris's fees; and was ultimately rendered homeless and without an ability to earn business income.

## PRAYER FOR RELIEF

WHEFORE the Plaintiff prays for Judgment:

(a) Seeking an accounting of overpayments from Harris and Stephens;

(b) Against Harris for damages under the FDCPA including statutory damages of $1,000 for each specific Violation;

(c) Against Harris and Stephens for common law fraud;

(d) Against Stephens for violation of the anti-retaliatory provisions of FERRA;

(e) Against Stephens for breach of contract;

(f) Against Harris and Stephens jointly and severally for conversion;

(g) Against Harris for legal malpractice including fiduciary breach and breach of an Implied Attorney-Client Contract;

(h) For the costs of this action;

(i) For an award of punitive or exemplary damages sufficient to deter acts of fraud and statutory violations in the future and;

(j) For such other or further relief as this Court deems just.

RESPECTFULLY SUBMITTED.

Date:  10/10/2017

Carl Alexander Wescott. Pro Se