Timothy J. Halloran – 104498
    THalloran@mpbf.com
Arthur J. Harris – 246986
    AHarris@mpbf.com
MURPHY, PEARSON, BRADLEY & FEENEY
88 Kearny Street, 10th Floor
San Francisco, CA  94108-5530
Telephone: (415) 788-1900
Facsimile: (415) 393-8087

Attorneys for Defendant
MICHELLE L. HARRIS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CARL ALEXANDER WESCOTT,<br><br>Plaintiff,<br><br>v.<br><br>MONETTE STEPHENS and MICHELLE HARRIS,<br><br>Defendants. | Case No.: 3:17-cv-05837-WHO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MICHELLE HARRIS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM AND SPECIAL MOTION TO STRIKE FIRST AMENDED COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**<br><br>Date: April 4, 2018<br>Time: 2:00 p.m.<br>Courtroom: 2, 17th Floor<br>Judge: William H. Orrick |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS .................................................................................. 3

    A.    The Underlying Action and the Dissolution Action. ............................... 3

    B.    Plaintiff's Claims against Harris in the Complaint. ................................ 6

III.  ARGUMENT ..................................................................................................... 6

    A.    Under FRCP 12(b)(6), Plaintiff's Complaint against Harris Should Be Dismissed on the Ground that it Fails to State Amy Claim upon Which Relief May be Granted. ................................................................................ 6

        1.    Applicable Legal Standards For A Rule 12(b)(6) Motion To Dismiss:..... 6

    B.    Plaintiff's Fifth and Seventh Cause of Action for Breach of Contract and Legal Malpractice, respectively, Fail Because Harris Never Entered into an Attorney-Client Relationship with Plaintiff. .......................................................... 7

        1.    Plaintiff's claim for legal malpractice is unsustainable: ........................... 7

        2.    Plaintiff's claim for breach of contract is not sustainable:........................ 9

    C.    Plaintiff's Fifth and Seventh Cause of Action for Breach of Contract and Legal Malpractice, respectively, Against Harris Are Time-Barred. ............................... 9

        1.    Plaintiff knew or should have known of a potential claim against Harris on or before September 1, 2014: ............................................................. 10

        2.    Plaintiff suffered "actual injury" on or before September 1, 2014, when Plaintiff was evicted from the San Francisco Property:........................... 11

        3.    Harris ceased representing Plaintiff no later than December 12, 2014, when Harris substituted out of the Underlying Action: ........................... 12

    D.    Plaintiff's Third Cause of Action for Fraud Is Time Barred by the Applicable Statute of Limitations. ............................................................................... 13

    E.    Plaintiff's First, Second, Third, Fourth and Sixth Cause of Action for Accounting, FDCPA, Fraud, Retaliation Under FIRREA, and Conversion Are Barred as a Matter of Law by the *Noerr-Pennington* Doctrine. .......................... 14

    F.    Plaintiff's Complaint Should be Stricken as a SLAPP-Suit under California Code of Civil Procedure Section 425.16 because it Arises From Harris' Litigation Conduct. ............................................................................. 16

        1.    Legal Standard for an Anti-SLAPP Motion Under Code of Civil Procedure § 425.16: ............................................................................... 16

        2.    The Anti-SLAPP Statute presumptively applies to this case, and Plaintiff cannot meet his burden of proof: ........................................................... 17

- i -

# TABLE OF CONTENTS
(continued)

Page

3.    Plaintiff has no probability of prevailing on the merits: ......................... 17

4.    Plaintiff's First, Second, Third, Fourth and Sixth Cause of Action for Accounting, FDCPA, Fraud, Retaliation Under FIRREA, and Conversion are barred as a matter of law under the California Civil Code § 47(b) litigation privilege. ...................................................... 18

a.    Harris' communications and conduct in the Underlying Action are protected by the litigation privilege, even if they were allegedly malicious or criminal in nature:................................... 21

G.    Plaintiff Cannot State a Valid Claim Against Harris Under the FDCPA. ........... 21

H.    Plaintiff's Failure to Exhaust Administrative Remedies Under FIRREA Deprives this Court of Subject Matter Jurisdiction over the Fourth Cause of Action:................................................................................................ 24

I.    Harris Should Be Awarded Her Reasonable Attorneys' Fees Incurred in Bringing This Anti-SLAPP Motion. ................................................... 25

J.    Plaintiff's Complaint Cannot Be Saved By Any Further Amendment, and Dismissal Without Leave to Amend is Appropriate ............................................ 26

IV.    CONCLUSION................................................................................................ 26

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

### CASES

5
*2974 Properties, Inc. v. Resolution Trust Corp.*,
6     23 Cal.App.4th 871 (1994) ........................................................................................23

*Adams v. Paul*,
7     11 Cal.4th 583 (1995) ............................................................................................11

8
*Ashcroft v. Iqbal*,
9     129 S.Ct. 1937 (2009) ..............................................................................................6

*Balistreri v. Pacifica Police Department*,
10     855 F.2d 1421 (9th Cir. 1988) ..................................................................................6

11
*Beal Bank, SSB v. Arter & Hadden, LLP*,
12     42 Cal.4th 503 (2007) ............................................................................................10

*Bell Atlantic Corp. v. Twombly*,
13     550 U.S. 544 (2007) ..................................................................................................6

14
*Block v. Sacramento Clinical Labs, Inc.*,
15     131 Cal.App.3d 386 (1982) ....................................................................................18

*Budd v. Nixen*,
16     6 Cal.3d 195 (1971) ................................................................................................10

17
*Cal. Pharm. Mgmt., LLC v. Zenith Ins. Co.*,
18     669 F.Supp.2d 1152 (2009) ....................................................................................14

*California Transport v. Trucking Unlimited*,
19     404 U.S. 508 (1972) ..........................................................................................14, 15

20
*Carden v. Getzoff*,
21     190 Cal.App.3d 907 (1987) ....................................................................................20

*Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*,
22     944 F.2d 1525 (9th Cir. 1991) ................................................................................15

23
*eCash Technologies, Inc. v. Guagliardo*,
24     127 F.Supp.2d 1069 (2000) ....................................................................................25

*Empress LLC v. City & County of S.F.*,
25     419 F.3d 1052 (9th Cir. 2005) ................................................................................14

26
*Equilon Enters. LLC v. Consumer Cause, Inc.*,
27     29 Cal.4th 53 (2002) ........................................................................................16, 17

*FDIC v. Shain, Schaffer & Rafanello*,
28     944 F.2d 129 (3d Cir. 1991) ....................................................................................24

- iii -

# TABLE OF AUTHORITIES
(continued)

**Page**

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal.4th 797 (2005) ...................................................................................13

*Fox v. Pollack*,
  181 Cal.App.3d 954 (1986) ..............................................................................7

*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005) .........................................................................15

*Freyermuth v. Credit Bureau Services, Inc.*,
  248 F.3d 767 (8th Cir. 2001) ...........................................................................21

*Gadda v. State Bar of Cal.*,
  511 F.3d 933 (9th Cir. 2007) ...........................................................................25

*Gillespie v. Civiletti*,
  629 F.2d 637 (9th Cir. 1980) .............................................................................6

Glover v. Wash. Mut. Bank, F.A.,
  *2009 U.S. Dist. LEXIS 23743 (W.D. Pa. 2009)* .............................................24

*Gonzales v. Arrow Fin. Servs., LLC*,
  660 F.3d 1055 (9th Cir. 2011) .........................................................................21

*Gordon v. Law Offices of Aguirre & Meyer*,
  70 Cal.App.4th 972 (1999) .............................................................................12

*Gutierrez v. State Farm Mut. Ins. Co.*,
  No. 5:11-CV-03111 EJD, 2012 WL 398828 (N.D. Cal. Feb. 7, 2012) .............22

*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*,
  175 Cal.App.4th 1306 (2009) ...........................................................................9

*Hawthorne v. Mac Adjustment*,
  140 F.3d 1367 (11th Cir. 1998) .......................................................................22

*Hilton v. Hallmark Cards*,
  599 F.3d 894 (9th Cir. 2010) ...........................................................................16

*Huertas v. Galaxy Asset Management*,
  641 F.3d 28 (3d Cir. 2011) ..............................................................................21

*Jolly v. Eli Lilly & Co.*,
  44 Cal.3d 1103 (1988) .....................................................................................13

*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*,
  18 Cal.4th 739 (1998) ...............................................................................11, 12

*Kachig v. Boothe*,
  22 Cal.App.3d 626 (1971) ...............................................................................20

- iv -

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3    *Kearney v. Foley and Lardner*,
         553 F.Supp.2d 1178 (2008)........................................................................................14
4
     *Kracht v. Perrin, Gartland & Doyle*,
5        219 Cal.App.3d 1019 (1990)....................................................................................8, 9

6    *Laird v. Blacker*,
         2 Cal.4th 606 (1992) .................................................................................................12
7
     *Lasky, Haas, Cohler & Munter v. Superior Court*,
8        172 Cal.App.3d 264 (1985).........................................................................................7

9    *Levin v. Graham & James*,
         37 Cal.App.4th 798 (1995) ..........................................................................................9
10
     *Ludwig v. Superior Court*,
11       37 Cal.App.4th 8 (1995).............................................................................................14

12   *Manistee Town Ctr. v. City of Glendale*,
         227 F.3d 1090 (9th Cir. 2000)...................................................................................14
13
     *McMahon v. LVNV Funding, LLC*,
14       744 F.3d 1010 (7th Cir. 2014)...................................................................................21

15   *MGIC Indem. Corp. v. Weisman*,
         803 F.2d 500 (9th Cir. 1986)........................................................................................7
16
     *Navellier v. Sletten*,
17       29 Cal.4th 82 (2002) .................................................................................................18

18   *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*,
         6 Cal.3d 176 (1971) ...................................................................................................10
19
     *Neman v. Commercial Capital Bank*
20       (2009) 173 Cal.App.4th 645 ......................................................................................23

21   *New.Net, Inc. v. Lavasoft*,
         356 F.Supp.2d 1090 (C.D. Cal. 2004) .......................................................................16
22
     *Noll v. Carlson*,
23       809 F.2d 1446 (9th Cir. 1987)....................................................................................25

24   *Pettitt v. Levy*,
         28 Cal.App.3d 484 (1972)..........................................................................................20
25
     *Portman v. George McDonald Law Corp.*,
26       99 Cal.App.3d 988 (1979)..........................................................................................17

27   *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.*,
         136 Cal.App.4th 464 (2006) .......................................................................................14

28

- v -

# TABLE OF AUTHORITIES
(continued)

Page

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
  508 U.S. 49 (1993)..................................................................................................14

*Quintilliani v. Mannerino*,
  62 Cal.App.4th 54 (1998).........................................................................................9

*Responsible Citizens v. Superior Court*,
  16 Cal.App.4th 1717 (1993).....................................................................................7

*Rogers v. Home Shopping Network, Inc.*,
  57 F.Supp.2d 973 (C.D. Cal. 1999) ..................................................................16, 17

*Rosa v. Resolution Trust Corp.*,
  938 F.2d 383 (1991)................................................................................................24

*Rubin v. Green*,
  4 Cal.4th 1187 (1993).............................................................................................17

*Rusheen v. Cohen*,
  37 Cal.4th 1048 (2006)...........................................................................................16

*Seltzer v. Barnes*,
  182 Cal.App.4th 953 (2010)....................................................................................16

*Silberg v. Anderson*,
  50 Cal.3d 205 (1990) ..................................................................................18, 19, 20

*Sosa v. DirectTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006)...................................................................................14

*Steiner v. Eikerling*,
  181 Cal.App.3d 639 (1986)......................................................................................20

*Stoll v. Sup. Ct.*,
  9 Cal.App.4th 1362 (1992) .......................................................................................9

*Theme Prods., Inc. v. News Am. Mktg. FSI*,
  546 F.3d 991 (9th Cir. 2008)....................................................................................14

*Turner v. Cook*,
  362 F.3d 1219 (9th Cir. 2004) ..................................................................................22

*United States ex rel. Newsham v. Lockheed Missile & Space Co.*,
  190 F.3d 963 (9th Cir. 1999)..............................................................................16, 25

*Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*,
  991 F.2d 1501 (9th Cir. 1993)...................................................................................7

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000)..................................................................................14

- vi -

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Williams v. Bank of Am.*,
  No. 2:12-CV-2513 JAM AC, 2013 WL 1907529 (E.D. Cal. May 7, 2013)......................................24

*Zenith Ins. Co. v. Cozen O'Connor*,
  148 Cal.App.4th 998 (2007) ..............................................................................................................7

*Zimmerman v. HBO Affiliate Grp.*,
  834 F.2d 1163 (3d Cir. 1987)..........................................................................................................22

## STATUTES

12 U.S.C.
  § 1821(d)...........................................................................................................................................23
  § 1821(d)(2)(A)(I)............................................................................................................................24
  § 1821(d)(6)(A)...........................................................................................................................23, 24
  § 1821(d)(7)(A)................................................................................................................................23
  § 1821(d)(13)(D)........................................................................................................................23, 24

15 U.S.C.
  § 1692(a)(5).......................................................................................................................................22
  § 1692(a)(6).......................................................................................................................................22
  § 1692e..............................................................................................................................................21
  § 1692e(10)........................................................................................................................................21
  § 1692e(2)(A)....................................................................................................................................21
  § 1692e(5)..........................................................................................................................................21

Civil Code
  § 47......................................................................................................................................................2
  § 47(b)................................................................................................................2, 16, 17, 18, 19, 20

Code of Civil Procedure
  § 338.....................................................................................................................................................9
  § 338(d)..............................................................................................................................................13
  § 340.6.................................................................................................................................9, 10, 11, 12
  § 340.6(a)........................................................................................................................................9, 12
  § 340.6(a)(1)................................................................................................................................10, 11
  § 425.16.......................................................................................................................................14, 16, 17
  § 425.16(b)(1)............................................................................................................................1, 2, 3
  § 425.16(b)(2)......................................................................................................................................2
  § 425.16(c)..................................................................................................................................24, 25

## OTHER AUTHORITIES

2 Mallen & Smith, Legal Malpractice (4th ed. 1996),
  § 20.8.................................................................................................................................................18

## RULES

Federal Rules of Civil Procedure
  Rule 12(b)(6) ...........................................................................................1, 2, 6, 7, 16, 17, 23

- vii -

## I.    <u>INTRODUCTION</u>

In this diversity action, Plaintiff Carl Wescott's ("Plaintiff") Complaint alleges two federal law claims and five state law causes of action against Defendant Michelle Harris ("Harris"): (1) accounting; (2) violations of FDCPA; (3) fraud; (4) retaliation under FIRREA; (5) breach of contract; (6) conversion; and (7) legal malpractice.  Pursuant to FRCP Rule 12(b)(6), Harris moves to dismiss Plaintiff's Complaint against her on the ground that it fails to state any claim upon which relief may be granted.  Additionally, Harris moves to strike Plaintiff's Complaint pursuant to California Code of Civil Procedure § 425.16(b)(1), on the ground that this is a SLAPP suit arising from Harris' protected litigation-related speech.

This case arises from an underlying family law action wherein Defendant Monette Stephens ("Stephens") sought to divorce Plaintiff, and enter into a written agreement with Plaintiff that resolved all of the issues in present in the dispute including separation of real and personal property, custody arrangement spousal support and solidification of a restraining order against Plaintiff.  This issue were being litigated in the action entitled *Monette Rosemarie Stephens v. Alexander Wescott*, San Francisco County Superior Court Case No. FDV-14-810782 ("Underlying Action"), which was later consolidated with the action entitled *Alexander Wescott v. Monette Rosemarie Stephens*, San Francisco County Superior Court Case No. FDI-14-781666 ("Dissolution Action").  Harris' only contact with Plaintiff was during an arm's length negotiation of a stipulation resolving the Underlying Action.

Plaintiff alleges that Harris negligently or intentionally withheld material information during the negotiation of the settlement terms thereby fraudulently inducing Plaintiff into entering into a written agreement to resolve the Underlying Action, or that Harris defrauded Plaintiff into accepting terms of stipulation that were adverse to his position.  The allegations in the Complaint, together with the evidence in the Affidavit of Michelle Harris, establish that Harris was never in an attorney-client relationship with Plaintiff and, therefore, neither breached an agreement with him nor owned him a duty of care.  Further, to the extent any of there was ever a valid claim for breach of contract, legal malpractice, or fraud, those claims are time-barred by the applicable statute of limitations.

Moreover, every communication by Harris which could have affected Plaintiff in any way was made in the context of the Underlying Action, and that all of Harris' allegedly wrongful conduct and

- 1 -

communications occurred within the scope of her legal representation of Stephens therein.  As such, all of Plaintiff's claims against Harris are barred as a matter of law by the federal *Noerr-Pennington* doctrine, as well as the California Civil Code § 47 "litigation privilege."

Under FRCP 12(b)(6), the Complaint must be dismissed as against Harris for failure to state a claim upon which relief may be granted, for the following reasons:

(1)     Plaintiff's claims for breach of contract and legal malpractice should be dismissed because there was no duty owed to Plaintiff by Harris; no attorney-client relationship existed between Plaintiff and Harris to confer such a duty;

(2)     Plaintiff's claims for breach of contract, fraud, and legal malpractice are untimely and, therefore, barred by the applicable statutes of limitations;

(3)     Plaintiff's claims for relief against Harris are barred as a matter of law by the *Noerr-Pennington* doctrine, applicable to any federal statute that might potentially undermine the rights protected by the Petition Clause of the First Amendment;

(4)     Plaintiff's claims for relief against Harris are barred as a matter of law by the Civil Code § 47 litigation privilege which broadly protects any communication or conduct made during or in relation to any official proceeding.

Moreover, Code of Civil Procedure § 425.16(b)(1) presumptively applies to Harris' alleged representational misconduct in the Underlying Action, and under Section 425.16(b)(2), the burden shifts to Plaintiff to establish a substantial probability he will prevail on all his causes of action against Harris. Based upon the evidence, it is clear that Plaintiff is unable to meet his burden of establishing a *prima facie* case supporting his claims against Harris, because all of Harris allegedly wrongful conduct arose from her legal representation of Stephens in the Underlying Action, and thus the Section 47(b) litigation privilege bars all of Plaintiff's claims against Harris.  Plaintiff has sued Harris, the counsel of his litigation opponent, for doing nothing more than advocating on behalf of his client Stephens: this is exactly the type of activity the California Supreme Court has held the Anti-SLAPP statute is meant to protect.

It is clear from the face of the Complaint, the nature of the claims against Harris and the applicable legal defenses that the Complaint cannot be saved by any amendment, and dismissal without

- 2 -

leave to amend is appropriate.  Accordingly, this Court should strike Plaintiff's Complaint in its entirety as to causes of action alleged against Harris without leave to amend pursuant to FRCP 12(b)(6) and/or Code of Civil Procedure § 425.16(b)(1).

## II.    STATEMENT OF FACTS

**A.    The Underlying Action and the Dissolution Action.**

On February 14, 2014, Defendant Monette Stephens ("Stephens") filed a request for restraining order against Plaintiff Alexander Wescott ("Plaintiff") in the action entitled *Monette Rosemarie Stephens v. Alexander Wescott*, San Francisco County Superior Court Case No. FDV-14-810782 ("Underlying Action").  (*See* Declaration of Michelle Harris ("Harris Decl.") at prgh. 2; Ex. 1[1].)  In the restraining order, Stephens alleged that Plaintiff abused narcotics and alcohol in front of their children.  (*Id.*)  Stephens also alleged that he verbally and physically abused her, and that her children had observed the abuse.  (*Id.*)  Stephens requested the Court issue a restraining order against Plaintiff, force him to move out of the family home, and restrict his access to Stephens and the children.  (*Id.*)  Stephens was also of the mindset that she wanted to separate and end her marriage to Plaintiff.  (*See* Complaint at prgh. 7.)

On or about February 27, 2014, Stephens retained Defendant Michelle Harris ("Harris") to represent her in the Underlying Action.  (*See* Harris Decl. at prgh. 2.)  The same day, Harris contacted Plaintiff for the first time and informed him that Stephens had "retained" Harris to negotiate a written agreement with Plaintiff to resolve their dispute.  (*See* Harris Decl. at prgh. 3; Ex. 2.)

Between February 27, 2014, and March 13, 2014, the parties engaged in an arm's length negotiation over the terms of a written agreement.  (*See* Harris Decl. at prgh. 3; Ex. 2.)  Throughout that process, Plaintiff was aware that Harris had been retained by Stephens to represent her interest in the Underlying Action and negotiating the Stipulation.  In particular, no later than March 4, 2014, Plaintiff "under[stood] that [Harris] represent[ed] Monette and *not [Plaintiff]*" in the parties negotiations over the terms of the Stipulation.  [Emphasis added.]  (*See* Harris Decl. at prgh. 5; Ex. 3.)  Similarly, on March 6, 2014, Plaintiff knew he was representing himself *pro per*: "[Plaintiff] simply cannot afford attorneys at this point in time, *which why [sic] I'm representing myself*, if possible…and *if I get an attorney for*

---

[1] Unless otherwise noted, all Exhibits are attached to the Harris Decl.

*this matter*, I'm hoping I can find someone pro bono." [Emphasis added.]  (*See* Harris Decl. at prgh. 8; Ex. 6.)  In fact, the same day Plaintiff expressed his ignorance of the terms of the attorney-client fee agreement between Harris and Stephens: "I assume you took Monette's case partially or fully pro bono…May I see whatever agreements you signed? What hourly rate are you using? May I see what you have done so far? How much do you expect you need to do?"  (*Id*.)

On March 5, 2014, Harris filed a Substitution of Counsel form in the Underlying Action.  (*See* Harris Decl. at prgh. 6; Ex. 4.)  The form stated that Harris was substituting in as Stephens' attorney only.  (*Id*.)  A copy of the Substitution of Counsel form was served on Plaintiff no later than March 12, 2014.  (*See* Harris Decl. at prgh. 9; Ex. 6.)

On March 13, 2014, Stephens and Plaintiff signed the Stipulation and Order Thereon Re: Custody, Support, and Housing ("Stipulation") regarding custody, support, and housing.  (*See* Harris Decl. at prgh. 10; Ex. 8.)  Harris signed the Stipulation approved as to form only as the attorney for Stephens.  (*Id*.)  In the Stipulation, Plaintiff agreed to pay for all of Stephens's legal fees.  (*See* Harris Decl. at prgh. 10-11; Ex. 8.)  As a result, Harris invoiced Plaintiff directly for the attorney's fees and costs for the work Harris performed as Stephens' counsel.  (*See* Harris Decl. at prgh. 12; Ex. 9.)

On June 2, 2014 Plaintiff filed a Petition for Dissolution in the action entitled *Alexander Wescott v. Monette Rosemarie Stephens*, San Francisco County Superior Court Case No. FDI-14-781666 ("Dissolution Action").  (*See* Harris Decl. at prgh. 13; Ex. 10.)  Plaintiff filed the pleading in *pro per* and the petition alleged that the dissolution was based on irreconcilable difficulties.  (*Id*.)

On August 11, 2014, the Underlying Action and the Dissolution Action were consolidated under the Dissolution Action.  (*See* Harris Decl. at prgh. 14; Ex. 11.)

No later than August 25, 2014, Harris undertook efforts to enforce the terms of the Stipulation. (*See* Harris Decl. at prgh. 15; Ex. 12.)  In particular, the Stipulation provided that Stephens would have exclusive use, possession, and control of the real property located at 853 Ashbury Street, San Francisco, CA 94117 ("San Francisco Property") starting immediately on the date that the Stipulation was executed (March 13, 2014).  (*See* Harris Decl. at prgh. 11; Ex. 8.)  It also stated that Stephens would have exclusive use, possession, and control of the real property located at 3910 Carol Avenue, Santa Barbara, CA 93110

- 4 -

("Santa Barbara Property") between June 16, 2014 and August 31, 2014. (*Id.*) In an effort to enforce these provisions, Harris sought and obtained to have Plaintiff removed from the San Francisco Property. (*See* Harris Decl. at prgh. 15; Ex. 12.) Plaintiff alleges that when he was forced to leave the San Francisco Property on or about September 1, 2014, he left most of his possessions at the house. (See Complaint at prgh. 27.) Plaintiff also alleges that forcing him to leave the San Francisco Property was a breach of the Stipulation perpetrated by Harris, which allegedly sent him on a "downward spiral of homelessness and greatly diminished ability to earn income." (*See* Complaint at prgh. 28.)

On December 2, 2014, Plaintiff submitted to a psychological & substance abuse evaluation on for purposes of evaluating the scope of child custody. (*See* Harris Decl. at prgh. 16.) In the evaluation, Plaintiff admitted to abusing alcohol and cocaine and described himself as a cocaine addict. (*Id.*) Psychological testing showed that Plaintiff possessed personality structures that are oppositional, mistrustful of others, and paranoid. (*Id.*) The testing also showed that Plaintiff engages in delusional thinking, displayed classic addict behavior, and had advanced addictive disease. (*Id.*)

On December 12, 2014, Harris filed a Substitution of Counsel form in the Dissolution Action substituting out of the case as Stephens' counsel. (*See* Harris Decl. at prgh. 17; Ex. 13.) Harris was replaced by Terry A. Szucsko. (*Id.*) Harris substitution out of the Dissolution Action concluded her attorney-client relationship with Stephens. (*Id.*)

On May 13, 2015, Stephens was granted a permanent restraining order against Plaintiff with a duration of five years, expiring May 13, 2020. (*See* Request for Judicial Notice ("RFJN") at Exhibit 14, pg. 1:22-25.)

In October 2016, a bench trial was held in the Dissolution Action. (*Id.* at pg. 2:4-10). The trial judge awarded Stephens sole legal and physical custody of the children, and sole use, possession, and ownership of the San Francisco Property. (*Id.*) To protect Stephens from the litigation tactics of Plaintiff, the trial court held that Stephens did not need to personally appear to respond to any future filings unless specifically instructed to do so by the Court. (*Id.*)

On November 4, 2016, Stephens filed a request for order declaring petitioner (Plaintiff) a vexatious litigant with the Superior Court of San Francisco County. (*Id.* at pg. 2:11-15.) The order was

granted May 1, 2017.  (*See* RFJN at Exhibit 14.)  The Court found that Plaintiff had filed numerous unmeritorious motions and requests for contempt against Stephens.  (*Id*. at pg. 7:7-19.)  Plaintiff also filed numerous unmeritorious lawsuits in federal court, other state courts, and foreign jurisdictions against Stephens.  (*Id*.)  The court found that Plaintiff used frivolous litigation tactics including being untruthful with the Court, forging documents, and back-dating documents.  (*Id*.)  The Court prohibited Plaintiff from filing any new litigation in *propria persona* in the courts of California without pre-approval of the Court.  (*Id*. at pg. 7:21-24.)

**B.   Plaintiff's Claims against Harris in the Complaint.**

Plaintiff filed this Complaint on October 11, 2017.  Plaintiff alleges that Harris represented him in the Underlying Action and negotiating the terms of the Stipulation.  He also alleges that Harris' representation of him was below the standard of care.  (*See* Complaint at prgh. 53-63.)  Plaintiff also alleges that Harris deceived Plaintiff about his monetary obligations arising out of the Stipulation. (*See* Complaint at prgh. 7-13.)  Plaintiff claims he only became aware that he was not represented by Defendant when the Stipulation was breached in August 2014. (*See* Complaint at prgh. 27.)

Plaintiff alleges that Harris' representation of Stephen's in the Dissolution Action and her efforts to enforce the terms of the Stipulation including seeking to collect damage obligations, were debt collection actions.  (*See* Complaint at prgh. 9-16.)  Likewise, Plaintiff alleges that by directly invoicing him $7,000.00 for legal services owed to herself, Harris engaged in debt collecting, which were in violation of the Fair Debt Collection Practices Act ("FDCPA").  (*See* Complaint at prgh. 10, 15-17.)

### III.   ARGUMENT

**A.   Under FRCP 12(b)(6), Plaintiff's Complaint against Harris Should Be Dismissed on the Ground that it Fails to State Amy Claim upon Which Relief May be Granted.**

**1.   Applicable Legal Standards For A Rule 12(b)(6) Motion To Dismiss:**

The standard applied on a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to FRCP Rule 12(b)(6) is well-established: a complaint should be dismissed if it appears beyond doubt that plaintiff can prove no set of facts in support of its claim which would entitle it to relief.  (*Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir. 1980).)  A Rule 12(b)(6) motion should be

- 6 -

granted if an affirmative defense or other bar to relief is apparent from the face of the complaint. (*Balistreri v. Pacifica Police Department*, 855 F.2d 1421, 1424 (9th Cir. 1988).)  "Factual allegations must be enough to raise a right to relief above the speculative level."  (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); accord *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).)  In ruling on a Rule 12(b)(6) motion to dismiss, the Court may also rely upon documents which are properly subject to judicial notice. (*MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).)  Here, Plaintiff's Complaint falls well short of what is required to survive this FRCP 12(b)(6) motion to dismiss.

**B.    Plaintiff's Fifth and Seventh Cause of Action for Breach of Contract and Legal Malpractice, respectively, Fail Because Harris Never Entered into an Attorney-Client Relationship with Plaintiff.**

### 1.    Plaintiff's claim for legal malpractice is unsustainable:

"To state the obvious, an attorney's duty to his or her client depends on the existence of an attorney-client relationship. If that relationship does not exist, the fiduciary duty to a client does not arise." (*Fox v. Pollack*, 181 Cal.App.3d 954, 959 (1986).)  "Except for those situations where an attorney is appointed by the court, the attorney-client relationship is created by some form of contract, express or implied, formal or informal." (*Fox*, *supra*, 181 Cal.App.3d at 959.)  "The contractual intent and conduct of the parties are critical to formation of such relationship." (*Lasky, Haas, Cohler & Munter v. Superior Court*, 172 Cal.App.3d 264, 285 (1985); *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1505 (9th Cir. 1993).)  "The question of whether an attorney-client relationship exists is one of law." (*Responsible Citizens v. Superior Court*, 16 Cal.App.4th 1717, 1733 (1993).)

No party can establish an attorney-client relationship unilaterally. (*Fox*, *supra*, 181 Cal.App.3d at 959.)  Thus, a supposed client's subjective belief regarding his or her representation by an attorney is insufficient to create a relationship. (*Id*.)  Further, "hindsight" beliefs regarding the existence of an attorney-client relationship are "legally irrelevant." (*Zenith Ins. Co. v. Cozen O'Connor*, 148 Cal.App.4th 998, 1010 (2007).)  Ultimately, a party must produce objective evidence to support the existence of such a relationship. (*Fox*, *supra*, 181 Cal.App.3d at 959-60.)

Here, the facts demonstrate the complete lack of any attorney-client relationship between Harris and Plaintiff.  An examination of the totality of the circumstances easily leads to this inexorable

- 7 -

conclusion. In particular, Harris never prepared or executed a retainer agreement contemplating the provision of legal services to Plaintiff and never told Plaintiff she represented him. (*See* Harris Decl. at prgh. 18 and 21.) On the contrary, Harris was retained by and represented Plaintiff's litigation opponent (Stephens) in the consolidated Dissolution Action. (*See* Harris Decl. at prgh. 2-3.) Plaintiff and Stephen's adversarial relationship in the Underlying Action is only amplified when taking into consideration Stephens allegations against Plaintiff of verbal and physical abuse against Stephens and its ancillary harm to their children. (*See* Ex. 1.) Harris informed Plaintiff that Stephens had "retained" Harris to negotiate a written agreement with Plaintiff to resolve their dispute. (*See* Harris Decl. at prgh. 3; Ex. 2.) Plaintiff also received a substitution of attorney form in the Underlying Action, before the Stipulation was executed, that identified Harris as Stephens counsel only. (*See* Harris Decl. at prgh. 9; Ex. 4 and 7.) Even in the Stipulation itself, Harris approved the agreement as to form on behalf of Stephens only. (*See* Ex. 8.)

Furthermore, Plaintiff recognized that Harris did not represent him in the Underlying Action or the negotiation of the Stipulation. Throughout the parties' arm's length negotiation over the terms of the Stipulation, Plaintiff routinely acknowledged that he "under[stood] that [Harris] represent[ed] Monette and not [Plaintiff]" and he was representing himself *pro per*, even though he may "get an attorney for this matter" in the future. (*See* Harris Decl. at prgh. 5 and 8; Ex. 3 and 6.) In fact, Plaintiff did not even know the terms of the attorney-client fee agreement between Harris and Stephens because he was not a party to any agreement with Harris. (*Id*.) Certainly, Plaintiff could not reasonably believe that he was in an attorney-client relationship with Harris when he knew absolutely no terms of the written contract between Stephens and Harris. Therefore, Harris did not owe a contractual or legal duty to Plaintiff to maximize his interests in the Stipulation at the expense of Stephens. On the contrary, as adversary in the arm's length negotiation, Harris owed only her client, Stephens, a fiduciary duty to zealously represent her against Plaintiff in the Underlying Action.

Accordingly, neither Plaintiff nor Harris ever exhibited any conduct suggestive of an attorney-client relationship between them. On the contrary, the evidence demonstrates that Harris, at all times pertinent here, represented Stephens only.

- 8 -

**2.    Plaintiff's claim for breach of contract is not sustainable:**

A claim for breach of contract is indistinguishable from a claim for professional negligence in a legal malpractice action.  After all, a court looks to the gravamen of the cause of action and not its title when analyzing a pleading.  (*Kracht v. Perrin, Gartland & Doyle*, 219 Cal.App.3d 1019, 1022 (1990).)  In *Kracht*, the court held that, "[w]here the injury is suffered by reason of an attorney's professional negligence, the gravamen of the claim is legal malpractice, regardless of whether it is pled in tort or contract." (*Id*.)  The court added, "[a]n injury suffered by reason of a defendant's conduct gives rise to a single cause of action, regardless of how many theories are pled by the complaint." (*Id*.)  Further, it is axiomatic that a breach of contract claim requires the existence of a contract.  (*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal.App.4th 1306, 1332 (2009).)

Here, as discussed *supra*, Harris never entered into an oral or written agreement with Plaintiff (regarding the provision of legal services or otherwise). (*See* Harris Decl. at prgh. 18 and 21.), which is fatal to Plaintiff's claim.  Accordingly, Plaintiff's claim for breach of contact fails as a matter of law.

**C.    Plaintiff's Fifth and Seventh Cause of Action for Breach of Contract and Legal Malpractice, respectively, Against Harris Are Time-Barred.**

Harris maintains that she was never engaged in an attorney-client relationship with Plaintiff.  (*See* Harris Decl. at prgh. 18 and 21.)  Nonetheless, even assuming *arguendo* that Plaintiff's claims for legal malpractice and breach of contract arise out of an existing relationship, it is clear that both causes of action are time-barred.  Code of Civil Procedure section 340.6(a) sets forth the applicable limitations period for commencing a civil action against an attorney for a wrongful act or omission (other than for actual fraud) arising in the performance of professional services.

CCP section 340.6(a) states:  (a) An action against an attorney for a wrongful act or omission . . . arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission."  Further, the period shall be tolled until the plaintiff has not sustained actual injury, the attorney continues represent the party, or the plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action.  (*See* CCP section 340.6(a).)

- 9 -

As noted above, the limitations period set forth in CCP section 340.6(a) governs <u>all causes of action</u> against an attorney, except those for actual, intentional fraud.  This is true whether the theory of liability is based on the breach of an oral or written contract, a tort, constructive fraud, or a breach of a fiduciary duty.  (*See*, e.g., *Levin v. Graham & James*, 37 Cal.App.4th 798, 805 (1995); *Quintilliani v. Mannerino*, 62 Cal.App.4th 54, 68 (1998); *Stoll v. Sup. Ct.*, 9 Cal.App.4th 1362, 1366-1369 (1992).)  Thus, Plaintiff's malpractice based contentions/causes of action alleged against Harris are subject to CCP section 340.6, except for an allegation of actual fraud, if one exists, which has a three year limitations period.  (CCP section 338.)  With regard to any other causes of action against Harris, which would be governed by CCP section 340.6, the statute of limitations analysis is straightforward and the pertinent facts are admitted by Plaintiffs in the First Amended Complaint:

1.      Plaintiff discovered, or at least he should have discovered, the facts constituting the wrongful act or omission by Harris on or by <u>September 1, 2014,</u> when Harris allegedly used the falsely induced Stipulation in Court to obtain a Court order to have Plaintiff forcibly removed from the San Francisco Property and barred from entering the Santa Barbara Property.  (*See* Complaint at prgh. 27.)

2.      Plaintiffs sustained an "actual injury" under CCP section 340.6(a)(1) on or by <u>September 1, 2014,</u> when Plaintiff was evicted from the two properties and started on a "downward spiral of homelessness and greatly diminished ability to earn income." (*Id.* at prgh. 28.)

3.      Harris ceased representing Plaintiff, if ever, no later than <u>December 12, 2014,</u> when she substituted out as counsel of record in the consolidated Dissolution Action.  (*See* Harris Decl. at prgh. 17; Ex. 13.)

4.      The First Amended Complaint in this matter was not filed until <u>October 10, 2017</u>.  This is almost three (3) years from the date that Plaintiff first discovered Harris' alleged negligence.

**1.      Plaintiff knew or should have known of a potential claim against Harris on or before September 1, 2014:**

When the Legislature adopted CCP section 340.6 in 1977, it codified the discovery rule of *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176 (1971) and *Budd v. Nixen*, 6 Cal.3d 195 (1971), but with a one-year limit from the date of actual or imputed discovery.  (*Beal Bank, SSB v. Arter &*

- 10 -

*Hadden, LLP*, 42 Cal.4th 503, 511 (2007).)  Under those decisions, the limitations period commences when the client discovers or should discover the facts essential to the malpractice claim.  (*Id.*)  Discovery of attorney malpractice occurs when the aggrieved client knows or should know the material facts constituting the attorney's wrongful act or omission. (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 190 (1971).)

Here, assuming *arguendo* that the gravamen of all of Plaintiff's claims against Harris arise out of an attorney-client relationship, the limitations period began to run when Plaintiff discovered or should have discovered that the terms of the Stipulation negotiated by Harris were not in Plaintiff's best interest. Particularly, once the Sheriff's arrived forced Plaintiff to vacate the San Francisco Property and precluded him future access to the Santa Barbara Property pursuant to an order procured by Harris in the Underlying Action, Plaintiff realized he was "falsely induced" by Harris to enter into the Stipulation and that Harris obtained a "fraudulent" court order.  (Complaint at prgh. 27.)  Plaintiff was even "told by attorneys he consulted that Stephens [with the help of Harris] was breaching the Stipulation."  (*Id.*)  Thus, the statute has been running since September 1, 2014, the day that Plaintiff received the Court order evicting him from both of his family homes.  Accordingly, the applicable limitations period of CCP section 340.6 commenced running approximately thirty-four (34) months ago.

### 2. Plaintiff suffered "actual injury" on or before September 1, 2014, when Plaintiff was evicted from the San Francisco Property:

The limitations period of CCP section 340.6 is tolled until the plaintiffs suffer an "actual injury." The California Supreme Court analyzed the actual injury requirement of CCP section 340.6(a)(1) extensively in *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, 18 Cal.4th 739 (1998).  In *Jordache*, the plaintiffs (collectively, "Jordache") discovered Brobeck's malpractice in December 1987, but they delayed filing a cause of action against Brobeck until August 15, 1990.  In the interim, following the December 1987 discovery of the malpractice, Jordache sued their insurer for not providing a defense to the Marciano action.  For purposes of calculating the limitations period of CCP section 340.6, Jordache contended that it did not incur "actual injury" until it settled its claim with its insurer.  However, in deciding against Jordache, the California Supreme Court held that Jordache incurred actual injury as a result of

- 11 -

Brobeck's malpractice that was "manifest, nonspeculative, and mature" as of December 1987. This was the date that Jordache discovered that Brobeck had failed to advise that Jordache's insurer should have covered the defense of the Marciano action. The California Supreme Court reasoned that Jordache's litigation against its insurer "could only confirm, but not create, Jordache's actual injuries from the late tender of the Marciano action's defense." (*Jordache*, 18 Cal.4th at 753.) The Court made clear that the damage arose upon the discovery of the impairment of Jordache's right against its insurer due to their attorneys' malpractice. (*Jordache*, 18 Cal.4th at 746; see *Adams v. Paul*, 11 Cal.4th 583 (1995).)

Here, Plaintiff incurred actual injury when he was forced to immediately vacate his home on September 1, 2014, because he lost possession and ownership of his house at that time. (*See* Complaint at prgh. 27.) Plaintiff also alleges that he was forced to leave valuable property at the San Francisco Property including his "laptops and office equipment and all his other possessions" because of the expediency of the Court ordered eviction, and that he was never able to recover all of his personal property. (*Id.*) Plaintiff's loss of real and personal property were "manifest, nonspeculative, and mature" as of September 1, 2014, even if the actual amount of the damages was not known at that time. (*Jordache*, 18 Cal.4th at 753.) "An existing injury is not contingent or speculative simply because future events may affect its permanency or the amount of monetary damages eventually incurred." (*Jordache*, 18 Cal.4th at 754.) Further, the eviction process required "prompt" remedial action of incurring professional and legal fees consulting with attorneys over the validity of the Stipulation and order enforcing the Stipulation. (*See* Complaint at prgh. 27.) This is an actual injury for purposes of a statute of limitations analysis pursuant to CCP section 340.6. Thus, Plaintiff suffered an actual injury almost 3 years before the Complaint in this action was filed.

### 3.    Harris ceased representing Plaintiff no later than December 12, 2014, when Harris substituted out of the Underlying Action:

The CCP § 340.6 tolling provisions are exclusive. (CCP § 340.6(a).) In no event shall the limitations period be tolled <u>except</u> as provided in statute. (*Laird v. Blacker*, 2 Cal.4th 606, 618 (1992).) The doctrine of "equitable tolling" whereby a party faced with inequitable circumstances is permitted to sue after the statutory time period has expired, does <u>not</u> apply to legal malpractice actions. (*Gordon v.*

1  *Law Offices of Aguirre & Meyer*, 70 Cal.App.4th 972, 980 (1999).)

2      It is indisputable that Harris ceased providing legal services to any party involved in the

3  Underlying Action on or by December 12, 2014, when she filed a substitution of counsel form in the

4  Underlying Action.  (*See* Harris Decl. at prgh. 17; Ex. 13.)  At that time, she was replaced as counsel of

5  record for any party in the Underlying Action by Terry Szucsko. (*Id.*)  As such, since Plaintiff is under

6  no legal or physical disability that would warrant the timely filing of a Complaint, there are no available

7  statutory grounds for tolling of the limitations period, and Plaintiff's claims are therefore barred by the

8  statute of limitations.

9  **D.    Plaintiff's Third Cause of Action for Fraud Is Time Barred by the Applicable Statute of**
10  **Limitations.**

11      A cause of action for fraud has a three (3) year limitations period.  In particular, a plaintiff must

12  bring an action within three (3) years "for relief on the ground of fraud or mistake.  The cause of action

13  in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts

14  constituting the fraud or mistake."  (CCP section 338(d).)  Similar to the start of the limitations period

15  for a legal malpractice action, the fraud limitations period commences when a plaintiff obtains

16  knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud. The action

17  therefore accrues when a plaintiff has notice or information of circumstances sufficient to put a

18  reasonable person on inquiry: i.e., when "the plaintiff suspects or should suspect that her injury was

19  caused by wrongdoing." (*Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103 (1988); *see also Fox v. Ethicon Endo-*

20  *Surgery, Inc.*, 35 Cal.4th 797, 807 (2005).)  Moreover, "wrongdoing" is used in its lay sense. Thus, a

21  plaintiff need not be aware of every fact necessary to establish a cause of action at law.  Plaintiffs who

22  have reason to suspect that someone has done something "wrong" to them have an incentive to sue, and

23  that is sufficient for statute of limitations purposes.  (*Jolly v. Eli Lilly & Co., supra*, 44 Cal.3d at 1111.)

24      As more fully discussed *supra*, the statute of limitations analysis on a fraud claim is straight-

25  forward and the pertinent facts are admitted by Plaintiff in the Complaint: Plaintiff discovered, or at least

26  should have suspected that his injury was caused by wrongdoing, the facts constituting the fraudulent

27  act by Harris on or before September 1, 2014, by which point Harris had falsely induced Plaintiff to enter

28

- 13 -

into the Stipulation, and used the Stipulation to obtain a fraudulent Court order.  (*See* Complaint at prgh. 27.)  Further, the same day Plaintiff suffered harm as a result of Harris' alleged wrongdoing based on his immediate loss of real and personal property, and the contention that eviction caused him to start on a "downward spiral of homelessness and greatly diminished ability to earn income." (*See* Complaint at prgh. 28.)  Thus, the last day to file a fraud claim against Harris was September 2, 2017.  Plaintiff's Complaint, however, was not filed until October 10, 2017, approximately 2 months after the statute ran.  Accordingly, whether the limitations period is one year or three, Plaintiff's claims are barred by the applicable statute of limitations.

**E.      Plaintiff's First, Second, Third, Fourth and Sixth Cause of Action for an Accounting, FDCPA, Fraud, Retaliation Under FIRREA, and Conversion Are Barred as a Matter of Law by the *Noerr-Pennington* Doctrine.**

The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of "the right of the people…to petition the Government for a redress of grievances."  Essentially, the *Noerr-Pennington* doctrine is a rule of statutory construction, applicable to any federal statute that might potentially undermine the rights protected by the Petition Clause.  (*Sosa v. DirectTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006), citing *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000).)  The *Noerr-Pennington* doctrine holds that "[t]hose who petition government for redress are generally immune from antitrust liability." (*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 56 (1993).)  While it arose in the context of antitrust law, the *Noerr-Pennington* doctrine has been greatly expanded to include all fields of law.  (See *California Transport v. Trucking Unlimited*, 404 U.S. 508, 512 (1972).)

Under the *Noerr-Pennington* doctrine, those who petition the government for redress are immune from liability for their petitioning conduct.  (*Empress LLC v. City & County of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005), citing *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000).)  In this way, the doctrine is analogous to California's anti-SLAPP statute, but applicable to federal claims. (*Kearney v. Foley and Lardner*, 553 F.Supp.2d 1178, 1181 (2008); *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.*, 136 Cal.App.4th 464, 480 (2006).)  The doctrine provides immunity to "virtually any tort, including unfair competition and interference with contract." (*Ludwig v. Superior Court*, 37 Cal.App.4th 8, 21-22 (1995).)  In *Ludwig*, the court explained:

- 14 -

> Obviously, the principle of constitutional law that bars litigation arising from injuries received as a consequence of First Amendment petitioning activity [should be applied], regardless of the underlying cause of action asserted by the plaintiffs. [T]o hold otherwise would effectively chill the defendants' First Amendment rights.

(*Ludwig*, 37 Cal.App.4th at 21, fn. 17.)

Additionally, like the California anti-SLAPP statute (Code of Civil Procedure § 425.16), the *Noerr-Pennington* doctrine not only protects petitioning activity, but also "activity incidental to and in anticipation of petitioning activity." (*Cal. Pharm. Mgmt., LLC v. Zenith Ins. Co.*, 669 F.Supp.2d 1152, 1167 (2009); *Theme Prods., Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008).)

Here, Plaintiff alleges that (1) Harris made misrepresentations to him regarding the terms of the Stipulation before it was executed and (2) misrepresentations to the Court after it was executed, all of which caused him significant damage. However, Harris' written and oral communications to Plaintiff during the arm's length negotiation and all of Harris' efforts to enforce the executed Stipulation were made in and/or as a direct result of the judicial proceeding in the Underlying Action and/or Dissolution Action. Specifically, Stephens' commenced the Underlying Action by filing a request for restraining order against Plaintiff. (*See* Harris Decl. at prgh. 1; Ex. 1.) Thereafter, Stephens retained Harris for the express purpose of representing her in the Underlying Action and to negotiate a resolution of that case by written agreement of the parties. (*Id*.) Subsequently, Plaintiff filed an action for divorce in the Dissolution Action. (*See Id*. at prgh. 13; Ex. 10.) Harris was also Stephens' counsel of record in that case. Thus, at all times of Harris' interactions with and communications to Plaintiff or the Court, there was a pending action where Harris was Stephens' counsel of record. (*See* Harris Decl. at prgh. 18-21.)

Further, all of Harris' alleged written and oral statements to the Court are certainly protected petitioning activity because they were made in the Underlying Action/Dissolution Action, and in an effort to enforcement the Stipulation on behalf of Harris' client. (*California Transport v. Trucking Unlimited*, 404 U.S. 508 (1972).) Moreover, Harris' alleged statements to Plaintiff were part of the arm's length negotiated agreement between the parties that had not yet been executed. Thus, not only were the allegedly actionable communications made during a pending action, they were sufficiently <u>related to</u> the litigation and the related Stipulation to fall within the protection of the Petition Clause to trigger the *Noerr-*

- 15 -

*Pennington* doctrine.  (See *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005).)

Even assuming *arguendo* that the statements made during negotiations are not technically made directly to the court in the Underlying Action, Plaintiff's claims are still unavailing as it is well established that communications related to litigation are sufficiently within the protection of the Petition Clause to trigger the *Noerr-Pennington* doctrine.  (*Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005); *Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1528 (9th Cir. 1991).)  Thus, Harris' negotiations over the terms of the Stipulation were nothing more than communicative activity to induce Plaintiff into executing the Stipulation that would conclude and fully resolve the Underlying Action and, as such, are protected communications under the *Noerr-Pennington* doctrine.  (*Columbia Pictures Industries*, *supra*, 944 F.2d at 1528.)

**F.    Plaintiff's Complaint Should be Stricken as a SLAPP-Suit under California Code of Civil Procedure Section 425.16 because it Arises From Harris' Litigation Conduct.**

**1.    Legal Standard for an Anti-SLAPP Motion Under Code of Civil Procedure § 425.16:**

The California Legislature enacted the anti-SLAPP statute, California Code of Civil Procedure § 425.16, *et seq.*, to provide for early disposal of non-meritorious lawsuits that would chill the valid exercise of constitutional rights, which includes petitioning the courts for redress of grievances. (*Rusheen v. Cohen*, 37 Cal.4th 1048, 1055-56 (2006).)  Anti-SLAPP motions may be brought in federal courts.  (*United States ex rel. Newsham v. Lockheed Missile & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999).)  As explained in *Rogers v. Home Shopping Network, Inc.*, 57 F.Supp.2d 973, 983 (C.D. Cal. 1999), an anti-SLAPP special motion to strike that is directed to the sufficiency of the complaint "must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of Section 425.16 applies."

Evaluating an anti-SLAPP motion is a two-step process.  First, a court must determine whether defendant has made a prima facie showing that the challenged cause of action arises from protected speech or conduct.  (*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010); *New.Net, Inc. v. Lavasoft*, 356 F.Supp.2d 1090, 1098 (C.D. Cal. 2004).)  Once defendant makes this threshold showing, the burden shifts to plaintiff to prove a probability of success on the merits of the challenged claims.  (*Id.*)

- 16 -

1

2

###     2.     The Anti-SLAPP Statute presumptively applies to this case, and Plaintiff cannot meet his burden of proof:

3

4

5

6

7

8

9

10

11

12

13

Harris are being sued by Plaintiff for representing Stephens in the Underlying Action.  By definition the conduct of an attorney in relation to litigation or any other official proceeding is protected by CCP § 425.16.  Settlement negotiations and agreements are made "in connection with" litigation for purposes of Section 425.16.  (*Seltzer v. Barnes*, 182 Cal.App.4th 953, 963 (2010).)  The anti-SLAPP statute also protects settlement negotiations allegedly conducted in bad faith or for an unlawful purpose.  (*Id.* at 964-967.)  Further, even negotiations conducted in bad faith are protected by the Civil Code § 47(b) litigation privilege, meaning Plaintiff cannot establish a "probability of prevailing on the merits," as required to defeat an anti-SLAPP motion.  (*Id.* at 969-972.)  It is clear from the Complaint that Plaintiff is seeking to chill Harris' constitutionally protected efforts to in the Underlying Action/Dissolution Action. (*Equilon Enters. LLC v. Consumer Cause, Inc.*, 29 Cal.4th 53, 66-67 (2002).)  Plaintiff's action against Harris thus indisputably arises from protected activity under the anti-SLAPP statute.

14

###     3.     Plaintiff has no probability of prevailing on the merits:

15

16

17

18

19

Because Harris has made a *prima facie* showing that Plaintiff's claims arise from protected activity, the burden shifts to Plaintiff to demonstrate a probability that he will succeed on the merits of his claims.  (*Equilon*, *supra*, at 61.)  Where, as here, the sufficiency of the pleading is at issue, a special anti-SLAPP motion to strike is "treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of CCP § 425.16 applies." (*Rogers*, *supra*, at 983.)

20

21

22

23

24

25

26

27

For the reasons set forth above, Plaintiff's lawsuit against Harris cannot survive a motion to dismiss on the pleadings pursuant to FRCP 12(b)(6).  Because this suit substantially arises from protected activity under California's Anti-SLAPP statute, and because Plaintiff will be unable to demonstrate a substantial likelihood of success on the merits of its claims, the Court should strike Plaintiff's claims against Harris in their entirety.  Plaintiff simply cannot meet its burden of establishing a *prima facie* case that it will prevail upon its causes of action against Harris, because all such claims are based entirely upon Harris' representational conduct in the Underlying Action.  Thus, all of Harris' activity is absolutely protected by under the anti-SLAPP statue, and all of Plaintiff's causes of action against Harris are barred.

28

- 17 -

**4.    Plaintiff's First, Second, Third, Fourth and Sixth Cause of Action for Accounting, FDCPA, Fraud, Retaliation Under FIRREA, and Conversion are barred as a matter of law under the California Civil Code § 47(b) litigation privilege.**

Civil Code § 47(b) establishes the so-called "litigation privilege," which broadly protects any communication or communicative act made during any official proceeding authorized by law: "A privileged publication or broadcast is one made: (a) In the proper discharge of an official duty, or (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law."

The Section 47(b) litigation privilege has been broadly construed by courts, and has been consistently interpreted to prevent, as a matter of law, all "secondary lawsuits" which arise solely from communications or communicative acts related to any proceeding authorized by law.  (*Rubin v. Green*, 4 Cal.4th 1187, 1196-98 (1993).)   To that end, the privilege is broadly applied even where communication is not "pertinent, relevant, or material in a technical sense to any issue in the action; it need only have some connection or relation to the proceedings."  (*Portman v. George McDonald Law Corp.*, 99 Cal.App.3d 988, 991-92 (1979).)  The privilege covers not only communications made during an official proceeding, but also to statements, communications, court filings, and other related communicative acts made outside of the strict confines of the proceeding.  (*Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990); *Block v. Sacramento Clinical Labs, Inc.*, 131 Cal.App.3d 386, 390-91 (1982).)

The California Supreme Court has held that the Section 47(b) privilege operates as an absolute limitation upon liability, regardless of whether defendant possesses wrongful intent, motivation, or malice: "the 'without malice' requirement applies only to those allegations against correspondents published in the pleadings and affidavits filed in dissolution proceedings and that, otherwise the Legislature intended [Section 47(b)] to apply to all publications, irrespective of their maliciousness."  (*Silberg*, supra, at 215-16.)  The privilege operates to bar all torts, except for malicious prosecution.  (*Id*., at 212.)  Moreover, there is no provision in the anti-SLAPP statute itself which categorically excludes any particular type of cause of action from its operation, including a claim for fraud, as is the case here.  (*Navellier v. Sletten*, 29 Cal.4th 82, 92-95 (2002).)  The principal rationale for the litigation privilege is to "afford litigants...the utmost freedom...without fear of being harassed subsequently by derivative tort actions," and to "promote the

- 18 -

effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests."

(*Silberg*, *supra*, at 213-214.)  As noted in Mallen & Smith's treatise Legal Malpractice:

> Attempts to circumvent the privilege often involve shotgun pleadings incorporating all conceivable theories, such as abuse of process, intentional infliction of emotional distress and interference with a contractual or advantageous business relationship.  Poorly disguised efforts to avoid the bar of the absolute privilege have received a hostile reception from the courts: "The salutary purpose of the privilege should not be frustrated by putting a new label on the complaint."

(2 Mallen & Smith, Legal Malpractice, § 20.8, at 690 (4th ed. 1996).)

*Silberg* rejected the "interest of justice" test, that an otherwise privileged communication is not privileged under Section 47(b) unless made for the purpose of promoting the interest of justice holding that the "interest of justice" test is wholly inconsistent with the numerous cases in which fraudulent communications or perjured testimony have been held privileged.  (*Id*., at 218.)

*Silberg* held that four elements must be met for conduct to fall within the immunity of Section 47(b):  the allegedly wrongful communication must be "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the [proceedings]; and (4) [have] some connection or logical relation to the action."  (*Id*., at 212.)

As discussed *supra*, Plaintiff's claims against Harris arise from her alleged communicative misconduct related to the Underlying Action, i.e., the allegation that Harris intentionally or negligently mislead Plaintiff into executing the Stipulation when Harris was allegedly aware the terms were not beneficial to Plaintiff.  Plaintiff likewise alleges that Harris' intentionally or negligently mislead the Court while attempting to enforce the terms of the wrongfully procured Stipulation.  A review of the allegations against Harris and the evidence proffered by her makes clear that all four of the elements set forth in *Silberg* are satisfied herein:

1.     Any allegedly wrongful communications were made in an "official proceeding authorized by law":  Plaintiff's claims against Harris arise from their allegedly wrongful communicative conduct as Stephens' counsel in the Underlying Action, wherein Harris advocated on behalf of Stephens to advance her position against Plaintiff in the Underlying Action and the related Stipulation.  The Underlying Action is obviously an "official proceedings authorized by law" within the meaning of Section 47(b).

- 19 -

2.    Any allegedly wrongful communications were by "a participant authorized by law": Harris was a "participant authorized by law," as she was Stephens' attorney of record in the Underlying Action and the Stipulation.  (*See* Harris Decl. at prgh. 1 and 6; Ex. 4.)

3.    Any allegedly wrongful communications were made "to achieve the objects of the proceedings":  Assuming *arguendo* there was any wrongful communication or conduct on Harris' part — e.g., statements and representations made within the context of the Underlying Action and/or efforts to mislead Plaintiff into executing the Stipulation or convincing the Court to enforce the terms of the Stipulation — they were clearly made to "to achieve the objects of the proceedings," that is, to advance Stephens' position against Plaintiff in the Underlying Action and achieve a favorable outcome for Stephens. (*See* Harris Decl. at prgh. 18-20.)  In particular, to reach an agreement with Plaintiff whereby Plaintiff vacated the San Francisco Property and the Sana Barbara Property, both of which were ultimately placed in Stephens' possession, control, and ownership.

4.    Any allegedly wrongful communications have "some connection or logical relation to the action":  Assuming *arguendo* there were wrongful communication or conduct on Harris' part, they were made for the express purpose of advocating on Stephens' behalf in the Underlying Action, and thus have "some connection or logical relation to the action." (*Id*.)  All of Harris' communication or conduct were made during and directly related to her representation of Stephens in the Underlying Action, and were intended to further her client's legal positions against her litigation opponent.  (*Id*.)

Under the *Silberg* test, any allegedly wrongful conduct or communications by Harris would be protected by the Section 47(b) litigation privilege.  Attorneys are absolutely protected when they zealously advance and protect their client's interest, even when doing so causes injury to adverse parties. (*Silberg*, *supra*, at 213.)  Plaintiff has not alleged a cause of action that would purported fall within any exception to the litigation privilege, nor does one exist in this case.

Every alleged act or omission by Harris which could have affected Plaintiff in any way was related to the Underlying Action and the Stipulation, and all her conduct and communications occurred during and within the scope of her legal representation of Stephens therein.  Harris' only communications with Plaintiff would have been related to the Underlying Action, the Stipulation, and her legal

- 20 -

1  representation of Stephens, who was Harris' sole connection to Plaintiff.  Every action taken by or

2  communication made by Harris was done within the capacity of her attorney-client relationship with

3  Stephens, and was directly related to this legal representation. The sole purpose of all of Harris' actions

4  and communications were to represent Stephens in the Underlying Action. Harris never directly entered

5  into any contract of any nature with Plaintiff, either oral or written.  Harris' signature on the Stipulation

6  was solely to state his approval as to its form on behalf of Stephens, not Plaintiff; Harris sole connection

7  with the Stipulation was her role as counsel for Stephens in negotiating its terms. Harris never had an

8  attorney-client relationship with Plaintiff and has never owed Plaintiff any fiduciary duty.

9  Given such factual circumstances, it is clear that all of Harris' allegedly wrongful conduct is

10  absolutely protected by the Section 47(b) litigation privilege.

11
          a.      **Harris' communications and conduct in the Underlying Action are
                  protected by the litigation privilege, even if they were allegedly malicious or**
12                **criminal in nature:**

13  Notably, it is irrelevant whether Harris' communications or conduct in the Underlying Action

14  were malicious in nature, or even criminal, as *Silberg* followed a large body of authority in which

15  malicious or even criminal conduct, when in the form of a communication made during litigation or an

16  official proceeding, was nonetheless privileged under Section 47(b):  *Carden v. Getzoff*, 190 Cal.App.3d

17  907, 915 (1987); *Steiner v. Eikerling*, 181 Cal.App.3d 639, 642-642 (1986); *Pettitt v. Levy*, 28

18  Cal.App.3d 484, 489 (1972); and *Kachig v. Boothe*, 22 Cal.App.3d 626, 641 (1971).  Thus, the allegedly

19  illegal, fraudulent, or malicious nature of Harris' communications to Plaintiff and/or the Court in the

20  Underlying Action is irrelevant to the Court's use of the litigation privilege to bar the continued

21  prosecution of Plaintiff's causes of action against Harris.

22  **G.    Plaintiff Cannot State a Valid Claim Against Harris Under the FDCPA.**

23  The FDCPA generally prohibits a "debt collector" from "us[ing] any false, deceptive, or

24  misleading representation or means in connection with the collection of any debt" (15 U.S.C. § 1692e),

25  and as is pertinent here, specifically prohibits "[t]he false representation of . . . the character, amount or

26  legal status of any debt" (§ 1692e, subd. (2)(A)), "[t]he threat to take any action that cannot legally be

27  taken or that is not intended to be taken" (§ 1692e, subd. (5)), and "[t]he use of any...deceptive means to

28

- 21 -

1    collect or attempt to collect any debt . . ." (§ 1692e, subd. (10)).  While the federal courts may be divided

2    on whether efforts to collect an unenforceable debt violate the FDCPA if unaccompanied by a threat of

3    litigation (compare *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020-21 (7th Cir. 2014)

4    (McMahon ) [no threat of litigation required] with *Huertas v. Galaxy Asset Management*, 641 F.3d 28,

5    32-33 (3d Cir. 2011) [threat of litigation required]; *Freyermuth v. Credit Bureau Services, Inc.*, 248 F.3d

6    767, 771 (8th Cir. 2001) [same]), the courts are in agreement that deceptive collection efforts violating

7    the FDCPA are actionable.

8            Whether a debt collection effort entails false representations, threats, or deception is judged

9    objectively from the perspective of the "'least sophisticated debtor.'"  (*Gonzales v. Arrow Fin. Servs.*,

10   *LLC*, 660 F.3d 1055, 1061-1062 (9th Cir. 2011); accord, *McMahon, supra*, 744 F.3d at p. 1019.)  This

11   unsavvy consumer is charged with a "'basic level of understanding and willingness to read with care,'"

12   but is of "'below average sophistication or intelligence,'" and is "'uninformed or naive.'"  (*Gonzales*, at

13   p. 1062.)  He or she is "under no obligation to seek explanation of conflicting or misleading language in

14   debt collection letters."  (*Id*.)

15           Here, Plaintiff alleges that Harris violated the FDCPA by (1) communicating to Plaintiff

16   information regarding the required minimum support due in a divorce settlement pursuant to the terms

17   of the Stipulation (Complaint at prgh. 11-16), and (2) sending Plaintiff an invoice for $7,000 owed to

18   her for legal services performed (Complaint at prgh. 10).  Even in the light most favorable to the Plaintiff,

19   these allegations are not subject to the prohibitions of the FDCPA.  Specifically, the FDCPA only

20   restricts collection activities of debt collectors and the facts alleged by the Plaintiff show that Harris is

21   not a "debt collector" within the meaning of the FDCPA.  Under the FDCPA, a debt collector is "any

22   person who regularly collects or attempts to collect directly or indirectly, debts owed or due or asserted

23   to be owed or due another." (15 U.S.C. § 1692(a)(6).)  Thus, as a threshold matter, a person must collect

24   or attempt to collect "debts" to be a debt collector under the FDCPA.

25           Debt is defined under the FDCPA as:

26           "any obligation or alleged obligation of a consumer to pay money arising out of a
             <u>transaction</u> in which the money, property, insurance, or services which are the
27           subject of the *transaction* are primarily for personal, family, or household
             purposes, whether or not such obligation has been reduced to a judgment."

28

- 22 -

1   [Emphasis added.] (15 U.S.C. § 1692(a)(5).)

2       By the plain terms of the statute, not all obligations to pay are considered "debts" subject to the

3   FDCPA. The FDCPA is only applicable when an obligation arises out a specified "transaction."

4   (*Hawthorne v. Mac Adjustment*, 140 F.3d 1367, 1371 (11th Cir. 1998).) Although undefined in the statute,

5   the 9th Circuit has adopted a definition of transaction which refers to consensual or contractual

6   arrangements. (*Turner v. Cook*, 362 F.3d 1219, 1228 (9th Cir. 2004).) Specifically, it is a transaction in

7   which a consumer is offered or extended the right to acquire money, property, insurance or services which

8   are primarily for household purposes. (*Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1168-69 (3d

9   Cir. 1987).) Damage obligations and tort judgments do not apply. (*See Hawthorne*, 140 F.3d at 1371.)

10      As a matrimonial law attorney, Harris does not collect "debt" as defined under the FDCPA.

11  Instead, she was simply enforcing one of the terms of the Stipulation which obligated Plaintiff to pay as

12  damages to Stephens, the costs of her attorney's fees in the Underlying Action. (*See* Harris Decl. at

13  prgh. 11; Ex. 8.) Similarly, support payments allegedly sought by Defendant were not consensual or

14  contractual arrangements, but damage obligations arrived at when settling the Underlying Action. (*See*

15  Ex. 8.) Simply stated, Harris is not a "debt collector" within the meaning of FDCPA because she is not

16  "any person who regularly collects or attempts to collect directly or indirectly, debts owed or due or

17  asserted to be owed or due another." (*See* 15 U.S.C. § 1692(a)(6).) The key phrase in the statute is "due

18  another." It shows that an attempt to collect debts owed to oneself does not make someone a debt

19  collector under the FDCPA. (*Gutierrez v. State Farm Mut. Ins. Co.*, No. 5:11-CV-03111 EJD, 2012 WL

20  398828, at *6 (N.D. Cal. Feb. 7, 2012).) An alleged attempt by Harris to collect a debt owed to herself

21  did not make her a debt collector under the FDCPA. Even if Plaintiff argued the $7000.00 collected by

22  defendant was for monetary obligations owed to Stephens, again, it would not have derived from a

23  transaction and, thus, would not be a collection of debt under the FDCPA.

24      Regardless, Harris actions were not in violation of the statute. Harris simply sent Plaintiff an

25  invoice identifying the amount of money outstanding for her fees and costs incurred in representing

26  Stephens in the Underlying Action. In fact, the invoice was provided in response to a direct request for

27  the document and information contained therein from Plaintiff. (*See* Harris Decl. at prgh. 12; Ex. 9.)

28

- 23 -

MEMORANDUM OF POINTS AND AUTHORITIES IN                     CASE NO.: 3:17-CV-
SUPPORT OF DEFENDANT'S MOTION TO DISMISS                          05837-WHO

However, Harris' invoice did not make any threats, false or otherwise, to take legal action to recover the debt. Further, Harris' attempts to collect on obligations owed to her client were not for obligations born of a transaction, but a damage obligation under the Stipulation. As such, the behavior could not be an attempt to collect a debt under the FDCPA.

Accordingly, Plaintiff's Second Cause of Action for a violation of the FDCPA is meritless and should be dismissed under Rule 12(b)(6).

**H.    Plaintiff's Failure to Exhaust Administrative Remedies Under FIRREA Deprives this Court of Subject Matter Jurisdiction over the Fourth Cause of Action:**

It is now well established that "exhaustion of the act's administrative review process is a precondition to litigation against the [FDIC] to recover a debt owed." (*Neman v. Commercial Capital Bank* (2009) 173 Cal.App.4th 645, 651.) "[S]ection 1821(d)(13)(D) denies jurisdiction to any court, state or federal, to consider claims except in accordance with section 1821(d) . . . [S]ection 1821(d) grants jurisdiction to certain courts only, and then in only two cases: [¶] (a) Judicial review of the receiver's determination of the claimant's appeal if it seeks administrative review (§ 1821(d)(7)(A)); and [¶] b. Over suits filed or *1249 continued by a claimant following the receiver's denial of a claim, or the expiration of 180 days after the filing of a claim. (§ 1821(d)(6)(A).)" (*2974 Properties, Inc. v. Resolution Trust Corp.*, 23 Cal.App.4th 871, 878 (1994).)

Significantly, the claim procedures under FIRREA are the only mechanism to seek relief from a failed financial institution, subject to limited judicial review. Unless and until a claim is filed with the FDIC and disallowed, "no court shall have jurisdiction over . . . (1) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or (2) any claim relating to any act or omission of such institution or the [FDIC] as receiver." (12 U.S.C. § 1821(d)(13)(D).) That is, District Courts do not have subject matter jurisdiction over a claim subject to FIRREA unless the claimant exhausts the statutory procedure within the specified time period. (*Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 392-393 (1991); see also *FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129, 132 (3d Cir. 1991) [courts have no jurisdiction

- 24 -

over claims besides that specified in FIRREA].)  And even then, the only courts with jurisdiction to review disallowed claims are the United States District Court for the District of Columbia or the district in which the failed bank's principal place of business was located - not state courts or arbitrators.  (*See* 12 U.S.C. §1821(d)(6)(A).)

It is unclear if Plaintiff was pursuing the Fourth Cause of Action for Retaliation under FIRREA against Stephens and Harris, or just Stephens.  Therefore, in an abundance of caution, Harris is responding to the cause of action as if it were plead against her.  Frankly, Plaintiff's FIRREA based claim is woefully deficient in explaining its applicability to Harris or Stephens because neither is a failed "financial institution" as defined by the statute.  Thus, it is unclear what basis Plaintiff believes the statute gives the FDIC to take action against Harris where the Act was established for the sole purpose of creating "a comprehensive scheme authorizing the FDIC to act as a receiver for failed institutions . . . [including] succeed[ing] to all rights, titles, powers and privileges' of the institution." (*Glover v. Wash. Mut. Bank, F.A.*, 2009 U.S. Dist. LEXIS 23743 at *3 (W.D. Pa. 2009), *citing* 12 U.S.C. § 1821(d)(2)(A)(I).)  Regardless, Plaintiff has alleged no facts showing any attempt to seek the necessary administrative remedies with the FDIC that are a prerequisite to pursing a claim under FIRREA.  Accordingly, the Fourth Cause of Action must be dismissed because FIRREA requires a plaintiff to exhaust its administrative remedies with the FDIC before filing claims in Court, which Plaintiff failed to do in this case. (12 U.S.C. § 1821(d)(13)(D); *Williams v. Bank of Am.*, No. 2:12-CV-2513 JAM AC, 2013 WL 1907529, at *3 (E.D. Cal. May 7, 2013).)

I.     **Harris Should Be Awarded Her Reasonable Attorneys' Fees Incurred in Bringing This Anti-SLAPP Motion.**

California Code of Civil Procedure § 425.16(c) provides for a mandatory award of attorneys' fees and costs when a special anti-SLAPP motion to strike is granted.  Federal courts have held that this provision to be substantive, and thus fully applicable to state law claims brought in federal court. *Lockheed Missile*, *supra*, 190 F.3d at 970-73; *eCash Technologies, Inc. v. Guagliardo*, 127 F.Supp.2d 1069, 1084 (2000).  Accordingly, in addition to an order granting the Anti-SLAPP Motion to Strike Plaintiff's Complaint, Harris request an order awarding reasonable attorneys' fees and costs in

- 25 -

1   connection with bringing this Motion pursuant to Section 425.16(c).

2   **J.      Plaintiff's Complaint Cannot Be Saved By Any Further Amendment, and Dismissal
3           Without Leave to Amend is Appropriate**

4           Dismissal without leave to amend is appropriate where the complaint cannot be saved by any

5   amendment.  (*Gadda v. State Bar of Cal.*, 511 F.3d 933, 939 (9th Cir. 2007).)  Even a *pro se* complaint

6   may be dismissed with prejudice where it is "absolutely clear that the deficiencies of the complaint could

7   not be cured by amendment."  (*Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).)  As discussed

8   *supra*, Plaintiff's claims against Harris are unsustainable for multiple reasons, none of which are curable

9   by further amendment.  Thus, it is clear from the face of the Complaint, the nature of the claims against

10  Harris, and the applicable legal defenses that Plaintiff's claims cannot be saved by any amendment and

11  should be dismissed without leave to amend.

12                          **IV.      CONCLUSION**

13          Based upon the foregoing, Harris respectfully requests that the Court grant this Motion to Dismiss

14  FAC without leave to amend.

15  Dated: February 16, 2018                          MURPHY, PEARSON, BRADLEY & FEENEY

16

17                                          By _____

18                                              Arthur J. Harris
                                                Attorneys for Defendant
19                                              MICHELLE L. HARRIS

20  AJH.3214518.docx

21

22

23

24

25

26

27

28
                                      - 26 -
MEMORANDUM OF POINTS AND AUTHORITIES IN                      CASE NO.: 3:17-CV-
SUPPORT OF DEFENDANT'S MOTION TO DISMISS                     05837-WHO

**CERTIFICATE OF SERVICE**

I, Maria Diazgranados, declare:

I am a citizen of the United States, am over the age of eighteen years, and am not a party to or interested in the within entitled cause. My business address is 88 Kearny Street, 10th Floor, San Francisco, California 94108.

On February 16, 2018, I served the following document(s) on the parties in the within action:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MICHELLE HARRIS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM AND SPECIAL MOTION TO STRIKE FIRST AMENDED COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**

| | |
|---|---|
| x | **VIA MAIL:** I am familiar with the business practice for collection and processing of mail. The above-described document(s) will be enclosed in a sealed envelope, with first class postage thereon fully prepaid, and deposited with the United States Postal Service at San Francisco, California on this date, addressed as listed below. |

Carl Alexander Wescott                         Attorney For Plaintiff in Propria Persona
P.O. Box 190875
San Francisco, CA
Phone: (415) 335-5000

I declare under penalty of perjury under the laws of the State of California that the foregoing is a true and correct statement and that this Certificate was executed on February 16, 2018.

By _____
        Maria Diazgranados

MEMORANDUM OF POINTS AND AUTHORITIES IN                         CASE NO.: 3:17-CV-
SUPPORT OF DEFENDANT'S MOTION TO DISMISS                              05837-WHO