Carl Wescott
PO Box 190875
San Francisco, CA 94966
*in propria persona*
+1 415 335 5000

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISON

| | | |
|---|---|---|
| Carl Alexander Wescott, | ) | Case Number CV 17 5837 ~~SK~~ WHO |
| Plaintiff | ) | |
| | ) | COMPLAINT FOR VIOLATIONS OF THE |
| -------------------- versus -------------------- | ) | FDCPA; RETALIATION UNDER FIRREA; |
| | ) | BREACH OF CONTRACT; CONVERSION; |
| Monette Stephens and | ) | LEGAL MALPRACTICE; WRONGFUL |
| Michelle Harris, esquire | ) | EVICTION; MORTGAGE FRAUD; CONSUMER |
| Defendants | ) | FRAUD; CIVIL FRAUD. |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY**
**(TO REPLY TO RESPONSE TO DEFENDANT'S MOTION TO DISMISS)**
Hearing: April 4th, 2018, 2:00 pm; Courtroom 2, 17th Floor, 450 Golden Gate Avenue.

Plaintiff Carl Wescott, proceeding *pro per*, hereby requests that this Court grant him leave to file the following concise Memorandum of Points & Authorities as a Sur-Reply to the Defendant's Reply Brief. In support of his Motion, the Plaintiff states that the Defendant has introduced a new argument at p. 14 to the effect that the Defendant must be directly employed by a consumer credit company in order to be liable under the Fair Debt Collection Practices Act. In addition, the Defendant continues to raise matters outside the pleadings, which is improper in a Motion to Dismiss.

MEMORANDUM OF POINTS AND AUTHORITIES

1. <u>None of the Defendant's Defenses Apply to a Claim for Legal Malpractice in California</u>

Despite the Defendant's mind-numbingly repetitive use of the adjective "undisputed" it appears that little about this case is actually undisputed by the parties.

The overwhelming thrust of the Defendant's argument is to hide behind the related doctrines of litigation privilege and Anti-Slapp provisions protecting legitimate petitioning activity. None of these apply to a legal malpractice case for a very good reason:

> Of particular note is the court's recognition of the similarities between a hired expert and a party's attorney: "The analogy between a party bringing a suit against its own expert witness and the party bringing a suit against its own attorney has some relevance. [T]he litigation privilege shields 'litigants, attorneys and witnesses from liability for virtually all torts except malicious prosecution. [Citations.]' *Yet if it also protected an attorney from any suit by a former client, no malpractice suit could be brought.'*" (Mattco, *supra*, 5 Cal.App.4th at p. 407, 6 Cal.Rptr.2d 781, italics added.) *Kolar v. Donahue, McIntosh & Hammerton*, 52 Cal.Rptr. 712, 719 (Cal. App. 2006).

The same reasoning applies to a breach of client loyalty. *Benasra v. Mitchell Silberberg & Knupp LLP (2004) 123 Cal.App.4th 1179, 20 Cal.Rptr.3d 621.* Incompetence and disloyalty on the part of attorneys is not privileged under any of the doctrinal barriers hastily erected by the Defendant.

The Defendant vigorously denies that she provided legal services to the Plaintiff. The Plaintiff alleges – and may amend to allege even more clearly if required – that the Defendant rendered legal advice in addition to charging him directly for her services. The rendering of legal advice is particularly important:

    3a] The evidence amply supports the existence of an attorney-client relationship at the time of the loan transaction. [4] "The fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result." (Westinghouse Elec. Corp. v. Kerr-McGee Corp. (7th Cir. 1978) 580 F.2d 1311, 1319, fn. omitted.) "When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established prima facie." (Perkins [43 Cal.3d 812] v. West Coast Lumber Co. (1900) 129 Cal. 427, 429 [62 P. 57].) "The absence of an agreement with respect to the fee to be charged does not prevent the relationship from arising." (Miller v. Metzinger (1979) 91 Cal.App.3d 31, 39 [154 Cal.Rptr. 22].) [3b] Coss sought and obtained petitioner's legal advice regarding preparation of a will at the same time that petitioner induced Coss to enter into the business transaction, and so an attorney-client relationship existed at that time. *Beery v. State Bar*, (1987) 43 Cal.3rd 802.

    Plaintiff has pled that he and his then-wife Monette Stephens agreed to hire one attorney (on the night of February 25th, 2014) to represent both their interests in their separation and marital dissolution. The introductory communication from the Defendant was consistent with that expectation. The Defendant repeatedly advised the Plaintiff concerning California law – for example, that $15,000 was the minimum in monthly support the Plaintiff should pay despite an annual income of $5,000 and that the Plaintiff would *ipso facto* be responsible for the Defendant's fees and should pay them directly. Here the case for an attorney-client relationship is much stronger than in *Beery* – there is direct legal advice and direct payment on the part of the client.

    The Complaint, at paragraphs 53-59 is rather detailed in its related allegations, asserting that the Defendant rendered advice, solicited confidences, and acted in a way that the Plaintiff's attorney would have acted.

    The Plaintiff is not arguing that the Defendant did too good a job representing his ex-wife. The Plaintiff is complaining that the Defendant intentionally assumed the role of legal advisor to the Plaintiff in a way that crossed the line. The Defendant's out-of-court lies to the Plaintiff are the issue in this case, not the Defendant's in-court zealous advocacy.

2. The Limitations Issue is a Fact-Intensive Question On Which The Defendant Bears the Burden of Proof

In California the attorney bears the burden of proof regarding the client's actual or constructive knowledge of the facts constituting malpractice. *Samuels v. Mix*, 22 Cal. 4th 1 (1999):

> Thus, in accordance with section 340.6(a)'s plain language, defendant, if he is to avail himself of the statute's one-year-from-discovery limitation defense, has the burden of proving, under the "traditional allocation of the burden of proof" (Fukuda v. City of Angels, supra, 20 Cal.4th at p. 820, citing Evid. Code, § 500), that plaintiff discovered or should have discovered the **[22 Cal. 4th 9]** facts alleged to constitute defendant's wrongdoing more than one year prior to filing this action. Defendant's remaining arguments may be considered as proffered grounds for our declaring a departure from Evidence Code section 500's general rule.

The Defendant tries to end-run her burden by identifying the Plaintiff's *eviction* as the event that triggered actual or constructive knowledge of malpractice. The Defendant makes much of the fact that the Plaintiff briefly consulted two attorneys (only one of whom had time to talk or meet) on the propriety of the *eviction* (not on the contours of the Defendant's representation of Plaintiff or any professional liability action against the Defendant). The Plaintiff has pled that the eviction was the event that persuaded him that the Defendant was not acting in his interests as his attorney. It does not follow that the Plaintiff would have been aware of underlying malpractice or misconduct.

The thrust of the Plaintiff's complaint is that the Defendant misled him about her allegiance and *lied about the law*. Specifically, the Plaintiff lied about the $15,000 per month minimum support payment; the Plaintiff's obligation to pay her fees (and pay them to her directly); the Plaintiff's responsibility for other financial obligations of the parties; and the effect of certain aspects of the parties' Stipulation. It is those non-privileged lies of which the Plaintiff

4

complains. Under Business & Corporations Act 6068(d) the Defendant is forbidden from dealing in lies to win cases, whether the lie is to a client or an adversary.

As of the date he was evicted, all the Plaintiff knew was that he had been incorrect about the Defendant's role in his case. However, his <u>damages</u> flowed from the Defendant's lies, not her allegiance. (In other words, if the Defendant had been truthful and honest with the Plaintiff, there might still have been professional misconduct but there would not have been actionable damages). <u>The Plaintiff had formed no belief and had no reason to form a belief that the Defendant had lied to him about the law.</u> This Court should not, even at the Defendant's urgent invitation, hold that an adversary is constructively aware that a lawyer is lying by virtue of the lawyer engaging in communication. The Plaintiff was damaged by the Defendant's <u>lies</u> and it took him years to develop the knowledge, and the confidence in his own knowledge, to identify the Defendant's lies. The Defendant was the recipient of a comprehensive and expensive professional education. To impute commensurate learning and skill to a non-lawyer victim is to immunize lawyers against claims of misrepresentation – which is the Defendant's precise objective here.

California Courts have recognized causes of action based on misstatements made by adversary attorneys. *Vega v. Jones, Day, Reavis & Pogue*, 17 Cal.Rptr. 3rd 26, 121 Cal.App.4th 282 (2004). In *Vega*, the offending law firm made a statute of limitations argument very similar to the one here: the Plantiff was on inquiry notice. The Court observed:

> Jones Day's argument fails on two counts. First, the contention that publicly available information cannot form the basis for a concealment claim is mistaken. The mere fact that information exists somewhere in the public domain is by no means conclusive. (See, e.g., *Seeger v. Odell* (1941) 18 Cal.2d 409, 414-415, 115 P.2d 977 [a plaintiff is not barred by constructive notice of a public record which would reveal the true facts].) Second, the question in a nondisclosure case is whether the defendant knows of material facts, and also knows that those facts are neither known nor readily accessible to the plaintiff.

5

The fact that the Plaintiff might have looked up the law to verify every false statement made the the Defendant is not relevant. The Plaintiff was without the means to "readily access" facts demonstrating that the Defendant had lied to him.

Indeed, a lawyer may be liable not merely to opposing parties **but to opposing counsel** for making misrepresentations for the purpose of closing a transaction. *Cicone v. URS Corp.* 183 Cal.App.3rd 194, 2013 (1986). In *Cicone,* the Court points out:

> In California it is well established that an attorney may not, with impunity, either conspire with a client to defraud or injure a third person or engage in intentional tortious conduct toward a third person. (Ibid).
>
> Thus, the case law is clear that a duty is owed by an attorney not to defraud another, even if that other is an attorney negotiating at arm's length. 183 Cal.App.2nd at 202.

It is actionable for an attorney to defraud another attorney with whom he is dealing at arms length. In this case, the evidence will show, if the Plaintiff is allowed to adduce it, that the Defendant attorney repeatedly assured him she was accurately imparting the law for the benefit of both parties. If an attorney, at arms-length, may justifiably rely on the ethical probity of a fellow attorney (and on BPC 6068(d) prohibiting fraud by that attorney, as well as California Rule of Professional Conduct 5-200) how is a non-attorney to be expected to instantly discover the lies of a learned professional covering a technically forbidding subject matter?

The Defendant has not met and cannot meet her burden and this case should not be dismissed on Statute of Limitations grounds.

3. <u>The Defendant Misreads the Fair Debt Collection Practices Act</u>

Some of the arguments advanced by the Defendant appear to veer perilously close to sophistry (e.g. that she is being persecuted for her "petitioning" activity. The Plaintiff believes however, that her arguments concerning the Fair Debt Collection Practices Act ("the Act") represent confusion that is sincere and profound.

She argues, in a crescendo of incoherence:

> Plaintiff has pled no facts which show that Harris collected debts on behalf of credit card creditors…..(MPA at p. 14).

If the Act were limited to lawyers for "credit card creditors" it would offer scant protection since credit card receivables are bought and sold often and consumers commonly face entities remote from the initial consumer transaction. Hence, it makes no *particular* sense to italicize the word *transactions* at page 15 of the Defendant's MPA. The implication appears to be that for the Act to apply to an attorney, the attorney must be representing a creditor in connection with an original specific transaction. That is ludicrous on its face.

What the Act does say, at 15 USC 1692a (5) and (6) is:

> (5) The term **"debt"** means any obligation or alleged obligation of a <u>consumer</u> to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

> (6) The term **"debt collector"** means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of <u>section 1692f(6) of this title</u>, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

7

(Section 6[B] goes on to except collectors who work for the corporation initiating the debt which is why, for example, Ford Credit is not liable under the Act, but any collection company buying the debt from Ford Credit is liable – more or less the opposite of the way the Defendant believes the Act works).

The Complaint alleges that the parties had massive consumer debt. (Complaint, par. 7). This is not surprising as Plaintiff and his ex-wife formed a consumer household and would have accumulated consumer debt. Harris attempted – quite successfully for a time – to force the Plaintiff to pay that debt and she did so <u>directly</u> on behalf of Monette and, at least <u>indirectly</u> on behalf of the commercial holders of debt. Some of the debt was owed solely by Monette; some was jointly owed; with respect to both categories, the Defendant attempted to shift the responsibility of payment solely to the Plaintiff and the Plaintiff, based on her misrepresentations and omissions, has indeed paid some of that debt and has ended up being liable for all of their consumer debt.

It makes perfect sense to apply the Act to matrimonial attorneys. Matrimonial attorneys collect consumer debt, directly on behalf of their clients and indirectly on behalf of the original creditors and/or commercial collectors. If called upon to testify, Harris will be obliged to testify that virtually all of her cases involve consumer debt and that a recurring issue in her practice is responsibility for those consumers debt. <u>To the extent that any of that debt is held by collection companies – as was the case in the Plaintiff's divorce – Harris is squarely and directly a debt collector under the Act.</u>

The Defendant was trying to collect consumer debts on behalf of Monette, who did not own the debt and in the interests of collectors who are the primary target of the Act. She routinely performs this role in her practice. There is no principled reason for exempting her from

8

the strictures of the Act and she is within the embrace of the Act according to its plain language.

The Defendant lied to collect consumer debts, owned by someone other than the Defendant (or her affiliates) from the Plaintiff. Her lies should be actionable under the Fair Debt Collection Practices Act.

4. Conclusion

The overwhelming weight of authority exempts legal malpractice actions from litigation privilege or the Petition Privilege and Noerr Pennington is even more remote. This Defendant rendered legal advice and collected legal fees from the Plaintiff which is sufficient to create an attorney-client relationship under California law. The Defendant has the burden to show the statute of limitations applies and she has not carried that burden because she cannot show that the Plaintiff would have been or could have been aware of her pattern of lying to him about the law simply because she successfully evicted him from his house. If anything, her success at evicting him convinced the Plaintiff that she was a very good lawyer indeed and that her knowledge of the law was exceptional – superior to the two lawyers he briefly consulted on the eviction issue. Finally, the Defendant lied to collect consumer debt from the Plaintiff and routinely collects consumer debts as part and parcel of a family law practice since consumers often collect consumer debts in family units.

The Defendant is clawing at the air to dismiss this case. She should not be allowed to prevail. It is a serious matter to abuse the office of attorney and there is no right, Constitutional or otherwise to lie and abuse the trust of a client whose reliance a lawyer has induced.

The Motion to Dismiss should be denied.   Respectfully submitted,

Date: MARCH 7th, 2018

_____
Carl Alexander Wescott. *Pro Se*